WALWORTH COUNTY and others, Respondents, v. CITY OF ELKHORN, Appellant.

*February 5—March 2, 1965.*

32

For the appellant there was a brief by *Lyman K. Arnold,* city attorney, and by *Robert D. Sundby* of Madison, special counsel, attorneys, and *Immell, Herro, Buehner, DeWitt & Sundby* of Madison, of counsel, and oral argument by *Robert D. Sundby.*

For the respondent Walworth county there was a brief and oral argument by *Philip B. Morrissy,* corporation counsel.

For the respondent town of Sugar Creek there was a brief by *Godfrey, Godfrey, Neshek & Conway* of Elkhorn, and oral argument by *Milton E. Neshek* and *Alfred L. Godfrey.*

For the respondent Edwin Runge there was a brief and oral argument by *Charles E. Wilson* of Elkhorn.

A brief *amicus curiae* was filed by *Julian Bradbury* of Madison for the League of Wisconsin Municipalities.

CURRIE, C. J. These two questions are raised by this appeal:

(1) Does sec. 62.23 (2), Stats., render void an interim extraterritorial zoning ordinance adopted by the city without the consent of the county board of supervisors?

(2) Is the ordinance void on the ground that it deprives plaintiff Runge of valuable property rights, or that it is arbitrary and capricious, in contravention of the due-process or the equal-protection-of-the-laws clauses of the Fourteenth amendment?

*Application of sec. 62.23 (2), Stats.*

Sec. 62.23 (7a), Stats., which provides for extraterritorial zoning by cities and villages, was enacted as ch. 241, Laws of 1963. The extent of extraterritorial zoning jurisdiction conferred by this statute upon fourth-class cities such as Elkhorn is limited to the unincorporated area lying within one and one-half miles of the city's corporate limits. We quote the following material provisions of this statute:

"(7a) *Extraterritorial Zoning.* The governing body of any city which has created a city plan commission under sub. (1) and has adopted a zoning ordinance under sub. (7) may exercise extraterritorial zoning power as set forth in this subsection. Insofar as applicable the provisions of sub. (7) (a), (b), (c), (ea) and (h) shall apply to extraterritorial zoning ordinances enacted under this subsection. This subsection shall also apply to the governing body of any village. . . .

"(b) The governing body may enact, without referring the matter to the plan commission, an interim zoning ordinance to preserve existing zoning or uses in all or part of the extraterritorial zoning jurisdiction while the comprehensive zoning plan is being prepared. Such ordinance may be enacted as is an ordinary ordinance but shall be effective for no longer than 2 years after its enactment, unless extended as provided in this paragraph."

The crucial question is whether a city such as Elkhorn can enact a valid interim extraterritorial zoning ordinance freezing existing uses for two years, as authorized by par. (b) of sec. 62.23 (7a), Stats., without obtaining the consent thereto of the county board of supervisors. The answer to

this question is dependent on whether or not the following provision of sec. 62.23 (2) is applicable to such interim zoning ordinances:

"It shall be the function and duty of the [city plan] commission to make and adopt a master plan for the physical development of the municipality, including any areas outside of its boundaries which, in the commission's judgment bear relation to the development of the municipality provided, however, that in any county where a regional planning department has been established, areas outside the boundaries of a municipality may not be included in the master plan without the consent of the county board of supervisors."

For the purposes of this appeal we shall assume, without deciding, that Walworth county has a regional planning department.

We deem it to be highly significant that ch. 241, Laws of 1963, in creating sec. 62.23 (7a), Stats., specifically enumerated what prior subdivisions of sec. 62.23 appertaining to zoning are to be applicable to this new act. Sub. (2) of sec. 62.23 is not included among these prior-enumerated subdivisions of such statute. Under the canon of statutory construction, *expressio unius est exclusio alterius,* it was not the legislative intent that the aforequoted restrictive provision of sec. 62.23 (2) should be applicable to interim extraterritorial zoning ordinances enacted under sec. 62.23 (7a) (b).

There is an additional reason why we conclude that the restriction of sec. 62.23 (2), Stats., is not applicable to the interim extraterritorial zoning ordinances such as that enacted by defendant. By its express terms, sec. 62.23 (2) would appear to be only applicable to master zoning plans initiated by a city plan commission. Viewing the wording of this subsection most favorably from the standpoint of respondent plaintiffs, the subsection's application to action taken by a city council under sec. 62.23 (7a) is ambiguous.

This is a proper case, therefore, in which to look to the statutory history to ascertain the legislative intent. *State ex rel. Tilkens v. Board of Trustees* (1948), 253 Wis. 371, 374, 34 N. W. (2d) 248.

Bill No. 3, A., creating sec. 62.23 (7a), Stats., was introduced in the assembly during the 1963 legislative session by the legislative council and was sponsored by it. In Vol. III, p. 137, of the 1963 report of the legislative council appears the following:

"Opponents of the bill believed that enactment of LRL 131 [Bill No. 3, A.] would be especially disruptive in those counties where the county zoning ordinance has been approved by all or most of the towns.

"Those persons favoring the legislation disagreed with this assumption and pointed out that an integral feature of the bill is that the towns affected will have a substantial voice in the preparation of the ordinance. This will put a town in a position to make a solid case for preservation of existing uses, if the town feels that these uses are the most appropriate for that particular town. The proponents of the bill also pointed out that it offers another protection to the counties and towns. That is, the bill provides for a 2-year land use 'freeze' pending the development of the ordinance. Whatever land uses the county or town had designated by ordinance, or usage, would be effective for the 2-year period. It was believed that these features of the bill would result in minimal disruption to the towns affected and would still permit the development of a comprehensive zoning ordinance which would be of maximum long-range benefit to the area."

This would seem to clearly indicate that it was contemplated by the framers of the bill that a city would be able to exercise extraterritorial zoning under sec. 62.23 (7a), Stats., without the consent of the county. The legislative council probably concluded that the objective of the statute to give cities and villages some control over the haphazard development of adjacent areas might be vitiated if the final decision in the matter were to rest with county boards.

We conclude that the instant interim extraterritorial zoning ordinance enacted by defendant city is not void and ineffective because no consent thereto was obtained from the county board of supervisors.

### Constitutionality of Ordinance.

Appellants have cited us to no case which directly holds that extraterritorial zoning violates the equal-protection-of-the-laws and due-process clauses of the Fourteenth amendment. Zoning ordinances have commonly been sustained on the theory that they constitute an exercise of the police power. *State ex rel. Saveland Park Holding Corp. v. Wieland* (1955), 269 Wis. 262, 266, 69 N. W. (2d) 217. The constitutionality of extraterritorial zoning was recently upheld by the Nebraska court in *Schlientz v. North Platte* (1961), 172 Neb. 477, 492, 110 N. W. (2d) 58, wherein the court stated:

"The Legislature may, and often does, expressly or by implication, grant to municipal corporations the right to exercise police power beyond and within a prescribed distance of the municipal limits. See, *City Transp. Co., Inc. v. Pharr,* 186 Tenn. 217, 209 S. W. (2d) 15; *Murray v. City of Roanoke,* 192 Va. 321, 64 S. E. (2d) 804 . . .

"They [the Nebraska statutes authorizing cities to zone extraterritorially] are enactments under the police power of the state, and at most a partial or quasi extension of corporate limits."

Our rapidly expanding population and the tendency of the greater portion of our people to live in urban areas cause most cities from time to time to extend their city limits into adjacent areas by annexation. Usually such annexations are preceded by the building of homes in adjacent agricultural areas by persons whose employment is in the city. Many of these adjacent areas are often spoiled as future first-class

residence districts because of objectionable commercial or industrial developments that have taken place in the absence of zoning. These undoubtedly are the reasons which prompted the legislature to enact sec. 62.23 (7a), Stats. We hold that this act providing for extraterritorial zoning is a reasonable and valid exercise of the police power.

We now turn to the reasonableness of the freeze of existing use districts by the interim ordinance. There is a division of authority in this country as to the validity of interim zoning ordinances. See 1 Yokley, Zoning Law and Practice (2d ed.), pp. 164, *et seq.*, secs. 80 and 81. Cases which have upheld the validity of interim or temporary zoning ordinances are *Miller v. Board of Public Works* (1925), 195 Cal. 477, 234 Pac. 381, 38 A. L. R. 1479; *Mang v. County of Santa Barbara* (1960), 182 Cal. App. (2d) 93, 5 Cal. Rptr. 724; *Fowler v. Obier* (1928), 224 Ky. 742, 7 S. W. (2d) 219; *Dallas v. Meserole* (Tex. Civ. App. 1941), 155 S. W. (2d) 1019; *Dowham v. City Council of Alexandria* (D. C. Va. 1932), 58 Fed. (2d) 784. See also *State ex rel. Davis Investment Co. v. Columbus* (1963), 175 Ohio St. 337, 194 N. E. (2d) 859; Anno. 136 A. L. R. 844; 8 McQuillin, Mun. Corp. (3d ed. Rev.), p. 143, sec. 25.64. Yokley expresses the view that the greater weight of authority sustains the right of a municipality to enact an interim zoning ordinance, provided there is the proper constitutional or statutory authorization. 1 Yokley, Zoning Law and Practice (2d ed.), p. 183, sec. 82.

We can perceive no constitutional objection to interim zoning when properly authorized by statute. It is common knowledge that the preparation of a proper comprehensive zoning ordinance often requires much study and time. The very pendency of the adoption of a comprehensive extraterritorial zoning ordinance might precipitate action on the

part of property owners in the territory to be affected which would tend to frustrate the objective sought to be attained by the prospective ordinance.

The remaining question is whether the two-year freeze of existing uses is too long to be reasonable. We hold that it is not. Plaintiff Runge has not demonstrated any undue hardship that would result to him during such two-year period. There has been no showing that his property is unfit for the purpose for which presently zoned. The fact that he may be prevented during this two-year period from erecting and operating a liquor store is wholly insufficient to establish that the interim ordinance is arbitrary or capricious.

We determine that Ordinance No. 349 enacted by defendant city does not violate the equal-protection-of-the-laws and due-process clauses of the Fourteenth amendment.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter a declaratory judgment consistent with this opinion adjudicating that Ordinance No. 349 is a valid and constitutional enactment and that it precludes the erection or operation of a liquor store by plaintiff Runge on his property.