L.P.VOIGT, Secretary Department of Natural Resources
You have requested my opinion with respect to whether unincorporated lands within 300 feet of a stream or 1000 feet of a lake or flowage which is also within the extraterritorial zoning jurisdiction of cities or villages as set forth in sec.62.23 (7a), Stats., are under the zoning jurisdiction of the county pursuant to sec. 59.971 (1), Stats., (shoreland zoning) or the adjacent city or village pursuant to sec. 62.23 (7a), Stats.
The two pertinent parts of the statutes provide as follows:
 "62.23 (7a) EXTRATERRITORIAL ZONING. The governing body of any city which has created a city plan commission under sub. (1) and has adopted a zoning ordinance under sub. (7) may exercise extraterritorial zoning power as set forth in this subsection. Insofar as applicable the provisions of *Page 70 
sub. (7) (a), (b), (c), (ea) and (h) shall apply to extraterritorial zoning ordinances enacted under this subsection. This subsection shall also apply to the governing body of any village.
 "(a) Extraterritorial zoning jurisdiction means the unincorporated area within 3 miles of the corporate limits of a first, second or third class city, or 1 1/2 miles of a fourth class city or a village. Wherever extraterritorial zoning jurisdictions overlap, the provisions of s. 66.32 shall apply and any subsequent alteration of the corporate limits of the city by annexation, detachment or consolidation proceedings shall not affect the dividing line as initially determined under s. 66.32. The governing body of the city shall specify by resolution the description of the area to be zoned within its extraterritorial zoning jurisdiction sufficiently accurate to determine its location and such area shall be contiguous to the city . . . ."
 "59.971 Zoning of shorelands on navigable waters. (1) To effect the purposes of s. 144.26 and to promote the public health, safety and general welfare, counties may, by ordinance enacted separately from ordinances pursuant to s. 59.97, zone all lands (referred to herein as shorelands) in their unincorporated areas within the following distances from the normal high-water elevation of navigable waters as defined in s. 144.26 (2) (d): 1,000 feet from a lake, pond or flowage; 300 feet from a river or stream or to the landward side of the flood plain, whichever distance is greater. If the navigable water is a glacial pothole lake, the distance shall be measured from the high watermark thereof.
 "(2) (a) Except as otherwise specified, all provisions of s. 59.97 apply to ordinances and their amendments enacted under this section, but they shall not require approval or be subject to disapproval by any town or town board.
 "(b) If an existing town ordinance relating to shorelands is more restrictive than an ordinance later enacted under this section affecting the same shorelands, it continues as a town ordinance in all respects to the extent of the greater restrictions, but not otherwise. *Page 71 
 "(c) Ordinances enacted under this section shall accord and be consistent with any comprehensive zoning plan or general zoning ordinance applicable to the enacting counties, so far as practicable.
"* * *
 "(5) An ordinance enacted under this section supersedes all provisions of an ordinance enacted under s. 59.97 that relate to shorelands."
The legislature has expressly adopted a statewide policy that all the navigable waters of the state shall be protected from degradation through regulation of the adjacent shoreland. Sec. 144.26, Stats., (Navigable Waters Protection Law). Sections 144.26 and 59.971, Stats., set forth that policy, and contain certain provisions and procedures whereby that policy is to be carried out. The policy is to be implemented primarily through local zoning, sanitary and subdivision regulations.
The local units of government authorized to enact and administer such regulation are counties, under sec. 59.971, Stats., and cities and villages, under sec. 62.23 (7), Stats. Section 144.26 (2) (C), Stats., specifically refers to the latter two municipality categories in the statutory definition of "regulations."
Section 62.23 (7a) is not mentioned in sec. 144.26, Stats. Its omission, coupled with the specific inclusion of secs. 62.23 (7) and 59.971, leads to the inference that extraterritorial zoning is not covered under the Navigable Waters Protection Act. If extraterritorial zoning were to supersede county shoreland zoning in areas where they both are applicable, the effect would be to make shoreland zoning inapplicable in areas up to three miles wide adjacent to incorporated cities and villages. Ordinary observation would quickly lead one to conclude that these are the very areas where shoreland regulation is more needed because of the almost universal worsening of water quality in navigable waters adjacent to urban or urbanizing areas. To exempt such areas from the public policies and regulations set forth in sec. 144.26, Stats., clearly would be contrary to the intent of the legislature, which is to protect all navigable waters of the state through either county shoreland zoning or municipal zoning. One must conclude, then, that the legislature *Page 72 
did not intend municipal extraterritorial zoning to supersede county shoreland zoning.
An examination of the structure of sec. 62.23 (7a), Stats., supports the conclusion that municipal extraterritorial zoning was not intended to supersede county shoreland zoning in areas where both are applicable. Extraterritorial zoning takes two forms under sec. 62.23 (7a):
1. Interim "freeze" zoning under sub. (b), which continues existing land uses and zoning regulations. On its face, the interim zoning would continue any county shoreland zoning then in effect rather than supersede it.
2. Permanent extraterritorial zoning under sub. (c), which requires approval of a 6-man joint committee composed of three representatives of the municipality and three representatives of the town to be zoned.
Permanent extraterritorial zoning requires the approval of one or more town representatives in the 6-man joint committee. County shoreland zoning, on the other hand, specifically eliminates the necessity of obtaining local town or town board approval before the zoning becomes effective in towns. Sec. 59.971 (2) (a), Stats. Ordinarily, county zoning does not become effective within towns until the county secures the approval of the local town board. See sec. 59.97 (5) (c), Stats. One must assume that the legislature would not have removed the requirement of town board approval if it had not determined that such an exemption was necessary for the success of a uniform statewide program of shoreland regulation and navigable waters protection. Thus, extraterritorial zoning cannot supersede county shoreland zoning in areas where applicable, because the effect would be to return control to the town under sec. 62.23 (7a), Stats., that had been expressly removed by sec. 59.971 (2) (a), Stats.
The purpose of extraterritorial zoning was discussed and approved in Walworth County v. Elkhorn (1965), 27 Wis.2d 30, 37,38, 133 N.W.2d 257, where the court stated that:
 "Our rapidly expanding population and the tendency of the greater portion of our people to live in urban areas cause most cities from time to time to extend their city limits into adjacent areas by annexation. Usually such annexations are preceded by *Page 73 
the building of homes in adjacent agricultural areas by persons whose employment is in the city. Many of these adjacent areas are often spoiled as future first-class residence districts because of objectionable commercial or industrial developments that have taken place in the absence of zoning. These undoubtedly are the reasons which prompted the legislature to enact sec. 62.23
(7a), Stats. We hold that this act providing for extraterritorial zoning is a reasonable and valid exercise of the police power."
Although the purposes of these two zoning laws are distinct, they are not necessarily contradictory. The purpose of shoreland zoning is the protection of navigable waters from the dangers of uncontrolled development of shorelands; likewise, the purpose of extraterritorial zoning is to protect municipalities from the financial and social costs of uncontrolled development, and to promote planned, orderly growth. In each instance, the legislature has found it necessary to alter the ordinary balance of powers among local units of government, and to place additional power in the local unit of government deemed to have the greatest interest in achieving the public purpose. Even though the legislature has made no express provision for the situations where these two zoning jurisdictions overlap, as was done in the case of overlapping extraterritorial jurisdictions (see sec. 66.32, Stats.), the statutes must be interpreted in a manner consistent with each other, and to give effect to both if at all possible.
I have already stated that, in order to effectuate the purposes of shoreland zoning, one must conclude that the legislature did not intend municipal extraterritorial zoning to supersede county shoreland zoning in areas where they overlap. In other words, the legislature intended the counties to have the primary responsibility for protection of navigable waters through shoreland regulations in all unincorporated areas of the county. The question remains, however, whether municipalities have the power under extraterritorial zoning to adopt regulations regarding shorelands which are more restrictive than those adopted by a county under sec. 59.971, Stats.
In the Walworth County case, the Supreme Court decided that municipal extraterritorial zoning laws would be effective without the *Page 74 
consent of a county, even when the county had adopted its own zoning ordinance. Walworth County v. Elkhorn, supra, at pp. 34-37. The court based its decision on the finding that:
 ". . . the framers of the bill . . . probably concluded that the objective of the statute to give cities and villages some control over the haphazard development of adjacent areas might be vitiated if the final decision in the matter were to rest with county boards." 27 Wis.2d at p. 36.
If one were to determine that cities and villages have no jurisdiction to adopt more restrictive regulations extraterritorially within shorelands, the effect would be to nullify the legislative determination under sec. 62.23 (7a) that the county boards should not have the final control over the development of areas adjacent to incorporated municipalities. The shoreland areas that would thereby be excluded from municipal control are by their very nature, of major importance in any municipal comprehensive plan. It must be concluded, therefore, that a determination that cities and villages have no power to zone shorelands within their extraterritorial jurisdiction would be contrary to the intent of the legislature as expressed in sec.62.23 (7a).
It is my opinion, therefore, that, in order to effectuate the equally important public purposes of secs. 59.971, 62.23 (7a) and 144.26, Stats., and to interpret these statutes in a manner consistent with each other, one must conclude that municipal extraterritorial zoning does not supersede county shoreland zoning within shorelands, but municipal extraterritorial zoning within shorelands is also effective insofar as it is consistent with, or more restrictive than, the county shoreland zoning ordinance.
RWW:SMS