COMMITTEE ON ASSEMBLY ORGANIZATION Legislature
You request my opinion on a number of questions relating to sec. 62.23 (7a), Stats., which sets forth the procedures by which cities and villages zone certain unincorporated areas immediately adjacent to but outside of their corporate limits.
Section 62.23 (7a), Stats., as amended by ch. 205, sec. 13, Laws of 1977, provides in part as follows:
 "(7a) Extraterritorial zoning. The governing body of any city which has created a city plan commission under sub. (1) and has adopted a zoning ordinance under sub. (7) may exercise extraterritorial zoning power as set forth in this subsection. Insofar as applicable sub. (7)(a), (b), (c), (ea), (h) and (i) shall apply to extraterritorial zoning ordinances enacted under this subsection. This subsection shall also apply to the governing body of any village.
 "(a) . . . The governing body of the city shall specify by resolution the description of the area to be zoned within its *Page 239 
extraterritorial zoning jurisdiction sufficiently accurate to determine its location and such area shall be contiguous to the city. The boundary line of such area shall follow government lot or survey section or fractional section lines or public roads, but need not extend to the limits of the extraterritorial zoning jurisdiction. . . .
 "(b) The governing body may enact, without referring the matter to the plan commission, an interim zoning ordinance to preserve existing zoning or uses in all or part of the extraterritorial zoning jurisdiction while the comprehensive zoning plan is being prepared. Such ordinance may be enacted as is an ordinary ordinance but shall be effective for no longer than 2 years after its enactment, unless extended as provided in this paragraph. . . . While the interim zoning ordinance is in effect, the governing body of the city may amend the districts and regulations of the ordinance according to the procedure set forth in par. (f).
"***
 "(f) The governing body of the city may amend the districts and regulations of the extraterritorial zoning ordinance after first submitting the proposed amendment to the joint committee for recommendation and report. The procedure set forth in pars. (c), (d) and (e) shall apply to amendments to the extraterritorial zoning ordinance. In the case of a protest against an amendment the applicable provisions under sub. (7)(d) shall be followed.
 "(g) Insofar as applicable the provisions of subs. (7)(e), (f), (8) and (9) shall apply. The governing body of a city which adopts an extraterritorial zoning ordinance under this subsection may specifically provide in the ordinance for the enforcement and administration of this subsection. A town which has been issuing building permits may continue to do so, but the city building inspector shall approve such permits as to zoning prior to their issuance."
Your questions and my responses follow.
 "1. What fractional section lines may be used as boundary lines for extraterritorial zoning ordinances?" *Page 240 
Section 62.23 (7a)(a), Stats., provides that the boundary line of the extraterritorial zoning area "shall follow government lot or survey section or fractional section lines or public roads." In my opinion, an extraterritorial zoning ordinance may utilize quarter section lines, quarter quarter lines, and other appropriate interior sectional descriptions. Although a strict interpretation of "fractional section lines" would limit that phrase to irregular sections, see, e.g., State v. Aucoin,206 La. 787, 20 So.2d 136, 142 (1944), and South Florida Farms Co.v. Goodno, 84 Fla. 532, 94 So. 672, 675 (1922), and a strict interpretation of "survey section" would preclude use of interior section lines, such strict interpretation would be inconsistent with the overall legislative purposes to enable cities and villages to exercise their extraterritorial powers fully or in part only.
 "2.A. Is a land use survey necessary when developing an interim ordinance?
 "2.B. Is an interim ordinance based on a land use survey?"
The legislative council, which introduced and sponsored the 1963 assembly bill creating sec. 62.23 (7a), Stats., indicated in Vol. III, p. 134, of the 1963 general report which discussed its proposal that "It is generally agreed that such an inventory [an exhaustive inventory of land uses] is a prerequisite to drafting the provisions of a comprehensive zoning ordinance." Thus, sec.62.23 (7)(c), Stats., which provides that zoning "shall be made in accordance with a comprehensive plan," is expressly incorporated by reference, insofar as applicable, under the provisions of the preamble of sec. 62.23 (7a).
But, as indicated in the first sentence of sec. 62.23 (7a)(b), Stats., the purpose of an interim zoning ordinance is "to preserve existing zoning or uses" in the extraterritorial zoning jurisdiction pending development of a "comprehensive zoning plan" and adoption of the final extraterritorial zoning ordinance Under this language, land uses previously established by county or town ordinance, or actual usage, can be temporarily "frozen" for as long as two or three years, pending the development of the final comprehensive zoning. See Walworth County v. Elkhorn,27 Wis.2d 30, 133 N.W.2d 257 (1965). Such an interim ordinance would not require a "land use survey," though such a survey probably would be part of the comprehensive plan upon which the final extraterritorial zoning ordinance would be based. *Page 241 
If an interim zoning ordinance enacted under sec. 62.23 (7a) is subject to any "development," it is only in a limited sense. The last sentence of paragraph (b) does authorize the governing body to "amend the districts and regulations" of the interim ordinance. But, such language must be considered in its context within the statute as a whole, Falkner v. Northern States PowerCo., 75 Wis.2d 116, 124, 248 N.W.2d 885 (1977), and construed to give effect to the evident purpose of the Legislature. There can be no doubt that the purpose of the interim ordinance under sec.62.23 (7a)(b) is to preserve the status quo while the proposed zoning ordinance is being developed or to prevent a course of development which could later frustrate and compromise the comprehensive plan. Amendments supportive of those goals can reasonably be inferred as being authorized under the provisions of paragraph (b), even though no land use survey exists.
 "3.A. How does one handle amendments to the interim extraterritorial zoning ordinance'?"
As provided in sec. 62.23 (7a)(b), Stats., the procedure for amendment of the interim zoning ordinance is set forth in sec.62.23 (7a)(f), Stats. Paragraph (f), in turn, provides that amendments must be considered by the joint extraterritorial zoning committee established under paragraph (c), and the hearing, notice and voting requirements are the same as those relating to the preparation and adoption of the final extraterritorial zoning ordinance under paragraphs (c), (d) and (e).
 "3.B. Who handles appeals during the time the interim zoning is in effect?'
It is my opinion that the city or village board of zoning appeals handles appeals while the interim ordinance is in effect as well as when the final comprehensive extraterritorial zoning ordinance is in effect. Paragraph (g) of sec. 62.23 (7a) reads in part, "Insofar as applicable the provisions of subs. (7)(e), (f), (8) and (9) shall apply." Paragraphs (e) and (f) of subsection (7) deal with the city board of appeals and with enforcement procedures. Section 61.35, Stats., makes the provisions of sec.62.23, Stats., applicable to villages. Although sec. 62.23
(7a)(g), Stats., does not specifically refer to interim ordinances, I believe it may be fairly inferred that the Legislature intended the city or village to handle appeals in all extraterritorial zoning matters. *Page 242 
"4. Who administers the extraterritorial zoning?"
The procedure for administration and enforcement of extraterritorial zoning closely follows the general city zoning law on the subject, and under the terms of the introductory paragraph and paragraph (g) of sec. 62.23 (7a) the city or village administers the extraterritorial zoning law.
 "5. Does the joint extraterritorial zoning committee stay in existence after the comprehensive extraterritorial zoning ordinance has been adopted?
 "6. If no to Question 5, does the joint committee have to be called back into existence if zoning is to be amended?"
Section 62.23 (7a)(f) specifically requires that the joint extraterritorial zoning committee participate in the development of all amendments to the extraterritorial zoning ordinance. Further, the three-year terms established for the town members on the committee bear no relation to the date the final extraterritorial zoning ordinance is adopted. Therefore, the joint extraterritorial zoning committee continues in existence after the comprehensive extraterritorial zoning ordinance has been adopted.
"7. If zoning has to be amended, who handles appeals'?"
As previously indicated, the procedure for amendment of extraterritorial zoning ordinances is described in sec. 62.23
(7a)(f). The city or village board of zoning appeals handles all administrative appeals stemming from interpretation or implementation of extraterritorial zoning by zoning officials. See the answer to Question 4. Protest against a proposed amendment may be made to the governing body of the city or village under the procedure set forth in sec. 62.23 (7) (d), Stats.
BCL:JCM