VILLAGE OF DEFOREST, a Wisconsin municipal corporation, Plaintiff-Respondent,

v.

COUNTY OF DANE, a political subdivision of the State of Wisconsin, Defendant,

FLYING J INC., a foreign corporation, Defendant-Appellant,†

Gene E. EVANS, Defendant.

Court of Appeals

*No. 96–1574. Oral argument March 14, 1997.—Decided May 22, 1997.*

(Also reported in 565 N.W.2d 296.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Richard A. Lehmann and Mark J. Steichen* of *Boardman, Suhr, Curry & Field* of Madison and *Robert H. Freilich and David W. Bushek* of *Freilich, Leitner & Carlisle* of Kansas City, Missouri. Oral argument by *Richard Carlisle.*

For the plaintiff-respondent the cause was submitted on the brief of *Allen D. Reuter and William S. Cole* of *Clifford & Reuter, S.C.* of Madison and *Kristine A. Euclide and Ted Waskowski* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison. Oral argument by *Allen D. Reuter.*

Before Dykman, P.J., Roggensack and Deininger, JJ.

DEININGER, J. Flying J Inc. appeals an order granting the Village of DeForest's motion for summary declaratory judgment and denying Flying J's cross-

motion for similar relief. Flying J also appeals a separate order which dismissed a counterclaim for damages under 42 U.S.C. § 1983 for failure to state a claim. Flying J argues that the trial court erred: (1) in interpreting § 62.23(7a), STATS.,[1] to authorize the Village of DeForest to enforce and administer an interim extraterritorial zoning ordinance enacted under that subsection; (2) in determining that Dane County lacked jurisdiction to approve a conditional use permit for which Flying J had applied prior to enactment of the interim ordinance; and (3) in concluding that Flying J had failed to state a claim for violation of its rights to equal protection of the laws, procedural and substantive due process, and just compensation. We are not persuaded by any of Flying J's arguments, and we therefore affirm both orders.

## BACKGROUND

On February 20, 1995, the Village passed a resolution declaring its intent to exercise extraterritorial zoning power in described lands situated in the Town of Vienna lying adjacent to the village border. On February 21, 1995, Flying J filed an application with Dane County zoning authorities for a conditional use permit for the operation of a "travel plaza," to include a restaurant, motel, service facilities, convenience store, and truck parking areas. The proposed facility was to be constructed at a highway

---

[1] Section 62.23(7a), STATS., authorizes cities and villages to exercise extraterritorial zoning power in areas adjacent to their boundaries. Under the subsection, a city or village may enact an "interim" extraterritorial zoning ordinance, effective for up to two years, in order to "preserve existing zoning or uses" while a "comprehensive zoning plan" and ordinance for the affected area is being prepared. Section 62.23(7a)(b).

interchange located within the Village's intended extraterritorial zoning jurisdiction. The parcel in question was then zoned under the Dane County code as "C–1," commercial land, on which "motels, hotels, taverns, funeral homes and drive-in establishments" were allowable as conditional uses.

On March 6, 1995, the Village passed Ordinance 95–11 (the interim ordinance), which included the following two provisions to be effective in the designated extraterritorial area: (1) "zoning district designations, district regulations and use restrictions" prescribed by the then-effective Dane County zoning code were adopted by reference; and (2) "[e]nforcement and administration of the zoning ordinances preserved by this ordinance, including . . . approval of all conditional use permits, granting of all variances, zoning district changes and appeals . . . shall be performed by the appropriate Village board, commission or officer" as designated in the Village's zoning code. Notice of the interim ordinance was mailed to Dane County and the Town of Vienna on March 13, 1995, and it was published on March 16, 1995. See § 62.23(7a)(b), STATS.

The Dane County Zoning and Natural Resources Committee sought an opinion from the corporation counsel as to whether it had the authority to act on Flying J's application. Counsel informed the committee that it did not and that the permit should be referred to the Village for review and approval. The committee, however, voted to grant the permit on May 30, 1995. The decision to grant the Flying J permit was appealed to the full Dane County Board, which upheld the committee decision on a nineteen to eighteen vote on July 13, 1995. At no time has Flying J requested

approval for its proposed travel plaza from any Village official or entity.

The Village then commenced this action, seeking a declaratory judgment that the County's approval of the permit was void because the County lacked jurisdiction to grant the permit. Flying J counterclaimed for a judgment declaring the county-approved permit valid, and for damages from the Village, alleging that enactment of the interim ordinance violated Flying J's constitutional rights. The trial court granted the Village's motion for summary judgment declaring the county action void, and in a separate order, the court granted the Village's motion to dismiss the civil rights counterclaim for failure to state a claim. Flying J appeals both orders.

## ANALYSIS

*a. Standard of Review*

■

We review the grant or denial of a motion for summary judgment de novo, applying the same methodology and standard as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law. *Id*. Whether a pleading states a claim for which relief may be granted is also a question of law which we review de novo. *Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610, 535 N.W.2d 81, 83 (Ct. App. 1995).

*b. Enforcement and Administration of Interim Ordinance*

Flying J argues that § 62.23(7a), STATS., does not permit the Village to "usurp" Dane County's zoning enforcement and administration authority by enacting an interim ordinance under § 62.23(7a)(b). It claims that the transfer of jurisdiction to administer zoning occurs only after the cooperative planning process results in the enactment of a "final" extraterritorial zoning ordinance. *See* § 62.23(7a)(c)–(e). The main thrust of Flying J's argument is that because paragraph (b) requires an interim ordinance to "preserve existing zoning," this means the existing county zoning *ordinance* must be preserved *in toto*, including the retention of administration and enforcement powers by county officials and entities. It also argues that paragraph (g), which provides that "an extraterritorial zoning ordinance under this subsection may specifically provide . . . for the enforcement and administration of this subsection" confirms its interpretation because of the legislature's failure to include the modifier "interim" before "extraterritorial zoning ordinance."

Flying J asserts that subsection (7a) is "clear and unambiguous" in prescribing this "two-step process," but even if it is not, legislative history supports this interpretation. The Village contests both assertions, arguing that § 62.23(7a), STATS., is clear on its face in authorizing the transfer of zoning administration and enforcement to cities and villages upon enactment of an interim ordinance, but if it is ambiguous, the legislative history supports the Village's reading of the subsection.[2] The parties' disagreement as to the meaning of § 62.23(7a) does not render the subsection ambiguous. *See National Amusement Co. v. DOR*, 41

---

[2] The trial court determined the subsection was ambiguous and consulted its history to aid in interpretation.

Wis. 2d 261, 267, 163 N.W.2d 625, 628 (1969). A statute may be said to be ambiguous when it is capable of being understood by reasonably well-informed persons in either of two senses. *Id.* Whether a statute is ambiguous is a question of law which we review de novo. *Boltz v. Boltz,* 133 Wis. 2d 278, 284, 395 N.W.2d 605, 607 (Ct. App. 1986).

We conclude that § 62.23(7a), STATS., plainly authorizes a municipality to administer and enforce an interim ordinance enacted under paragraph (b) of the subsection. It thus becomes unnecessary to consider the legislative history or other matters extrinsic to the statutory language. *Interest of Peter B.,* 184 Wis. 2d 57, 70–71, 516 N.W.2d 746, 752 (Ct. App. 1994). Our goal is to ascertain the legislature's intent, for which we must first resort to the language of the statute. *State v. Rognrud,* 156 Wis. 2d 783, 787–88, 457 N.W.2d 573, 575 (Ct. App. 1990). In interpreting the language, however, we must consider the subsection within the context of the entire section of the statute and related sections, *Brandt v. LIRC,* 160 Wis. 2d 353, 362, 466 N.W.2d 673, 676 (Ct. App. 1991), *aff'd,* 166 Wis. 2d 623, 480 N.W.2d 494 (1992), and we must avoid absurd, unrealistic or unreasonable interpretations. *See Maxey v. Racine Redevelopment Auth.,* 120 Wis. 2d 13, 20, 353 N.W.2d 812, 816 (Ct. App. 1984).

Paragraph (g) of § 62.23(7a), STATS., specifically authorizes a village, when it "adopts *an* extraterritorial zoning ordinance *under this subsection*" to "provide in the ordinance for the enforcement and administration of this *subsection*." (Emphasis supplied.) If the legislature's intent was to authorize village enforcement and administration of only the final, post-plan ordinance authorized by paragraph (e), it could have: (1) put this language in paragraph (e); (2)

referred to "an . . . ordinance under par. (e)" instead of "an . . . ordinance under this subsection"; or (3) specifically excluded interim ordinances under paragraph (b) from the grant of enforcement and administration authority. Since it did none of these, we fail to see how paragraph (g) can be read other than to apply to both interim and final extraterritorial zoning ordinances.

Section 62.23(7a), STATS., specifies that "sub. (7)(a)" of § 62.23 "shall apply to extraterritorial zoning ordinances enacted under this subsection." Subsection (7)(a), in turn, expresses a general grant of power to cities and villages to enact zoning ordinances in order to promote "health, safety, morals or the general welfare of the community," and it directs that "any ordinance . . . enacted . . . under this *section* [§ 62.23], shall be liberally construed in favor of the [Village]." (Emphasis supplied.) While this language is directed at the interpretation of ordinances, the legislature plainly expresses its intent that cities and villages be deemed empowered to the greatest extent possible in carrying out the purposes of the zoning enabling statute. Our reading of subsection (7a) is consistent with this intent, and it is consistent with the supreme court's determination that the legislature intended to grant cities and villages plenary extraterritorial zoning authority:

> [I]t was contemplated by the framers of the bill that a city would be able to exercise extraterritorial zoning under sec. 62.23(7a), Stats., without the consent of the county. The legislative council probably concluded that the objective of the statute to give cities and villages some control over the haphazard development of adjacent areas might be

811

vitiated if the final decision in the matter were to rest with county boards.

*Walworth County v. City of Elkhorn*, 27 Wis. 2d 30, 36, 133 N.W.2d 257, 261 (1965).

Our reading of § 62.23(7a), STATS., is also consistent with a 1978 opinion requested by the Legislature's Committee on Assembly Organization, wherein the Attorney General opined as follows:

> It is my opinion that the city or village board of zoning appeals handles appeals while the interim ordinance is in effect as well as when the final comprehensive extraterritorial zoning ordinance is in effect. Paragraph (g) of sec. 62.23 (7a) reads in part, "Insofar as applicable the provisions of subs. (7)(e), (f), (8) and (9) shall apply." Paragraphs (e) and (f) of subsection (7) deal with the city board of appeals and with enforcement procedures. Section 61.35, Stats., makes the provisions of sec. 62.23, Stats., applicable to villages. Although sec. 62.23 (7a)(g), Stats., does not specifically refer to interim ordinances, I believe it may be fairly inferred that the Legislature intended the city or village to handle appeals in all extraterritorial zoning matters.
>
> . . . .
> The procedure for administration and enforcement of extraterritorial zoning closely follows the general city zoning law on the subject, and under the terms of the introductory paragraph and paragraph (g) of sec. 62.23 (7a) the city or village administers the extraterritorial zoning law.

67 Op. Att'y Gen. 238, 241–42 (1978). While we are not bound by the Attorney General's opinion, it is persuasive and entitled to great weight on a question of statutory interpretation. *Norton v. Town of Sevastopol*, 108 Wis. 2d 595, 599, 323 N.W.2d 148, 150–51 (Ct. App.

1982). Moreover, we agree with the Village that the failure by the legislature to revise subsection (7a) in the intervening eighteen years is indicative that the interpretation in the opinion properly reflects the legislature's intent. *See State v. Anderson*, 160 Wis. 2d 435, 441, 466 N.W.2d 681, 683 (Ct. App. 1991).

Finally, we conclude that reading subsection (7a) to require county enforcement of the Village's interim ordinance is at least unreasonable, if not absurd. Had the legislature's intent been to preserve the County's entire zoning ordinance, including county enforcement and administration, during the interim extraterritorial planning period, it would not have been necessary, or even advisable, to authorize a city or village to "enact . . . an interim zoning ordinance to preserve existing zoning or uses." Section 62.23(7a)(b), STATS. Rather, a more reasonable procedure, if that were the intent, would be for the statute to direct a city or village to trigger the "freezing" of the existing zoning districts and administration by way of a resolution, notice or petition to the cognizant zoning bodies.[3]

Flying J also argues that the interim ordinance must be invalidated, or at least construed narrowly, because its enactment impermissibly altered the "status quo," and because "automatic reversion of zoning control" violates the due process rights of

---

[3] The Village also points to the absurdity of denying its administration of the interim ordinance in a situation where no county or town zoning pre-dates the enactment of the interim ordinance. In that case, existing "uses" would nominally be "preserved," but under Flying J's interpretation no entity would have the authority to enforce the "freeze." *See Town of Grand Chute v. City of Appleton*, 91 Wis. 2d 293, 297, 282 N.W.2d 629, 631 (Ct. App. 1979) (if no zoning exists in extraterritorial area, interim ordinance freezes existing uses).

landowners and persons with pending applications to the County. We disagree. We have already cited the legislature's directive that all ordinances enacted under § 62.23, STATS., are to be liberally construed in favor of the cities and villages. We discuss the impact of the ordinance on pending county applications and the due process issue below.

### c. Pending Permit Application to Dane County

Flying J next argues that even if the Village acquired zoning administration and enforcement authority by virtue of enactment of the interim ordinance on March 6, 1995, Dane County retained jurisdiction over Flying J's application for a conditional use permit, which was filed with the County on February 21, 1995. Essentially, it is Flying J's position that its application to Dane County was "complete" prior to the enactment of the Village's interim ordinance, and therefore it had a "right to have the permit application determined under the laws existing at the time the completed application was filed with Dane County."

Flying J devotes a significant portion of its brief to the argument that its February 21, 1995 application was "complete," asserting that since it was, the application could be acted upon only by Dane County and not by the Village. Flying J notes that the trial court concluded the application was not complete until well after March 6, 1995, and claims that the court "implicitly" ruled that a complete application would have produced a different result. First, we disagree that the trial court reached any conclusion regarding the jurisdictional status of a complete application pre-

dating the enactment of the interim ordinance.[4] More importantly, we conclude that the completeness or not of Flying J's application is not determinative of whether Dane County retained jurisdiction to review and approve it.

First, we emphasize that no substantive zoning regulations changed as a result of the Village's enactment of the interim ordinance. After March 6, 1995, just as before that date, the proposed facility was a conditional, not a permitted, use in the "C–1" district. The necessity of obtaining the discretionary approval of a zoning committee, and the standards to be met in order to obtain approval, did not change;[5] only the identity of the decisionmaker(s) did. We thus question whether any legally significant change to the "status quo" was effected by enactment of the interim ordinance. *Cf. City of Madison v. Town of Madison*, 127 Wis. 2d 96, 102, 377 N.W.2d 221, 224 (Ct. App. 1985) (change in "legal machinery" which does not create,

---

[4] The trial court stated in its decision and order:

> [Flying J] failed to submit an application which conformed to the zoning code requirements in effect at the time of the application and cannot assert that they acquired any vested rights which would preclude the application of the Village's authority under the interim ordinance to review and approve [Flying J's] conditional use permit application.

[5] Section 10.255(2), DANE COUNTY CODE OF ORDINANCES, authorizes the zoning committee to "grant or deny" a conditional use based upon its determination of whether the standards set forth in the ordinance will be met. A conditional use may not be granted unless "all" conditions are met (generally: no detriment to public health, safety, etc.; no impairment of values and enjoyment of neighboring properties or future development; and adequate provisions for utilities, drainage, traffic flow). Additionally, the committee may condition the approval on specific restrictions or guarantees.

define or regulate rights may be applied retroactively); *Matter of Seraphim,* 97 Wis. 2d 485, 496, 294 N.W.2d 485, 492, *cert. denied,* 449 U.S. 994 (1980) (entitlement to due process and fair hearing does not imply entitlement to choose fact-finder).

Even if the transfer of decisionmaking authority from the County to the Village could be characterized as somehow violative of Flying J's vested rights, it does not follow that Flying J had acquired such rights by applying for the conditional use. To the contrary, Flying J had acquired no vested rights by simply requesting a permit whose issuance was discretionary. *See State ex rel. Humble Oil & Ref. Co. v. Wahner,* 25 Wis. 2d 1, 12–13, 130 N.W.2d 304, 310 (1964) (applicant acquired no vested rights by merely applying for use not "flatly permitted"). Had Flying J applied for authority to construct and operate a facility whose use was permitted in a "C–1" district, the completeness or not of the application (i.e., whether the proposed facility conformed to all applicable regulations) might be of significance. *See Lake Bluff Hous. Partners v. City of South Milwaukee,* 197 Wis. 2d 157, 175, 540 N.W.2d 189, 196 (1995). What Flying J sought, however, was something other than the ministerial issuance of a permit to proceed with a project fully in compliance with zoning regulations then in effect. Denying vested rights to Flying J, "who submitted an application for a . . . permit that did not propose a permitted use under existing zoning . . . is squarely in line with the general rule in Wisconsin." *Id.* at 177, 540 N.W.2d at 197.

■

For the foregoing reasons, we conclude the trial court was correct in declaring that, by enacting the interim ordinance, the Village acquired "exclusive

jurisdiction over conditional use permit applications and other administrative and enforcement powers" in the affected area, and that the County's approval of Flying J's application for a conditional use permit is "void for lack of jurisdiction."

### d. Claim for Civil Rights Violations

Since we affirm the trial court's first order, we must now consider whether Flying J has stated a claim against the Village for damages under 42 U.S.C. § 1983. In its second counterclaim, Flying J alleges that the Village's enactment of the interim ordinance, under color of law, violated its rights to procedural and substantive due process, equal protection, and property under the Fifth and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Wisconsin Constitution. Flying J argues that it "enjoys a legitimate claim of entitlement to [the conditional use permit applied for] prior to any local government taking action which changes existing rules or understandings or otherwise deprives Flying J of its property interest," and further that the Village's ordinance prevents it "from exercising its federally protected right to receive all subsequent ministerial zoning and building permits, develop the property for intended purposes, and realize reasonable economic return from the property."

Flying J acknowledges that its counterclaim rests on many of the same assertions it made in support of its positions regarding declaratory relief. Inasmuch as we have concluded that the enactment of the ordinance did not adversely affect any vested right of Flying J, we similarly conclude that it has not stated a claim for compensatory relief for a violation of its rights under 42 U.S.C. § 1983.

Section 62.23(7a), STATS., and more specifically, "interim zoning when properly authorized by statute," has been upheld against claims that an interim extraterritorial zoning ordinance violates the Equal Protection and Due Process Clauses. *Walworth County v. City of Elkhorn*, 27 Wis. 2d 30, 37–39, 133 N.W.2d 257, 261–62 (1965). Flying J does not allege that the Village has violated its rights by arbitrarily or capriciously administering the ordinance, nor can it do so since Flying J has never sought its desired conditional use from the Village. Before an action will lie for an unconstitutional taking of property in violation of the Fifth Amendment, a landowner must allege that it has been denied "all or substantially all practical uses" for the property. *Zealy v. City of Waukesha*, 201 Wis. 2d 365, 374, 548 N.W.2d 528, 531 (1996). Flying J's counterclaim makes no such allegation.[6]

In short, Flying J has not stated a claim for damages against the Village for which relief may be granted, and its second counterclaim was properly dismissed.

*By the Court.*—Orders affirmed.

[6] Flying J's counterclaim also alleges that the Village failed to comply with notice and hearing requirements when enacting the interim ordinance. The citations in the counterclaim are to § 62.23(7)(d), STATS., which on its face applies to general zoning ordinances, not extraterritorial ordinances under subsection (7a). Flying J fails to provide any support in its brief for its notice and hearing claim, and we therefore will not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992).