WILL, on behalf of herself and others similarly situated, Appellant, v. DEPARTMENT OF HEALTH & SOCIAL SERVICES and others, Respondents.*

*No. 141.  Argued October 1, 1969.—Decided October 31, 1969.*
(Also reported in 171 N. W. 2d 378.)

* Motion for rehearing denied, without costs, on January 9, 1970.

508

510

For the appellant there was a brief by *Zubrensky, Padden, Graf & Bratt* and *Richard Perry,* all of Milwaukee, and oral argument by *Mr. Perry.*

For the respondents the cause was argued by *Donald P. Johns,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.  To secure the writ of mandamus sought, appellant was required to establish ". . . a

clear legal right" to the performance of a ". . . duty sought to be enforced [which] is positive and plain . . . ." [2] The motion to quash an alternative writ of mandamus is to be treated in the same manner as a demurrer.[3] Such motion admits the allegations of fact in the petition but asserts that the facts alleged do not support issuance of the writ.[4]

The petitioner and others had requested hearings before the state department after being denied certain additional benefits by the county agency administering the distribution of categorical aids.

The only issue in this case is whether the relevant statutes and department rules confer upon petitioner a clear legal right to a hearing and a decision within sixty days of the date of request for such hearing.

### FEDERAL STATUTE.

The relevant section of the Social Security Act which provides for a review hearing before the state agency in aid for dependent children cases is:

"(a) A State plan for aid and services to needy families with children must (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them; (2) provide for financial participation by the State; . . . (4) *provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness.*" [5] (Emphasis supplied.)

---

[2] *State ex rel. Johnson v. County Court* (1968), 41 Wis. 2d 188, 192, 163 N. W. 2d 6, quoting *Neu v. Voege* (1897), 96 Wis. 489, 493, 71 N. W. 880.

[3] Sec. 293.01, Stats.

[4] *State ex rel. James L. Callan, Inc. v. Barg* (1958), 3 Wis. 2d 488, 89 N. W. 2d 267.

[5] 42 USCA, sec. 602; similar provisions for the other categories are contained in 42 USCA, secs. 302(a), 1202(a), 1352(a).

Where as here petitioner was denied additional AFDC payments, the federal statute provides for a hearing before the state agency, but does not require that the hearing be held within sixty days of the request.

## STATE STATUTE.

The relevant section of the Wisconsin statute providing for a hearing by the state agency in cases involving AFDC payments and other categorical aids is:

". . . Any person whose application for aid to the blind, old-age assistance, aid to families with dependent children and aid to totally and permanently disabled persons is not acted upon by the county agency with reasonable promptness after the filing of the application, or is denied in whole or in part, or whose award is modified or canceled, or who believes his award to be insufficient, may petition the department for a review of such action. *The department shall, upon receipt of such petition, give the applicant or recipient reasonable notice and opportunity for a fair hearing. . . .*" [6] (Emphasis supplied.)

This responsive state legislation follows the federal enactment in providing for a fair hearing review by the state department. It does not require that the hearing be held or decision reached within sixty days.

## FEDERAL/STATE REGULATIONS.

Petitioner does not cite and we do not find what could be termed a duly enacted federal regulation setting sixty days as the time limit for the hearing before the state agency. The only duly enacted administrative rule on this point in Wisconsin sets forth the steps required in seeking a review hearing by the state department and defines the nature of such hearing.[7] The rule does not

---

[6] Sec. 49.50 (8), Stats.

[7] 6 *Wisconsin Administrative Code*, sec. PW–PA 20.18.

provide that the state agency hearing is to be held within sixty days. The only reference to sixty days or any specific time limit appears to be in two handbooks, one put out by a federal agency, one by the state department against which this writ is sought. Each handbook will be analyzed in turn.

### FEDERAL HANDBOOK.

A publication of the United States Department of Health, Education and Welfare, entitled *Handbook of Public Assistance Administration,* includes this paragraph:

"Prompt, definitive and final administrative action *will* be taken within sixty days from the date of the request for a fair hearing. The claimant will be notified of the decision, in writing, in the name of the State agency, and, to the extent it is available to him, of his right to judicial review." [8]   (Emphasis supplied.)

In order to determine the effect of this handbook statement, it is necessary to consider the federal/state relationship involved in the AFDC (and similar categorical aids) program. A beginning is this quotation from a recent United States Supreme Court decision:

"The AFDC program is based on a scheme of cooperative federalism. . . . It is financed largely by the Federal Government, on a matching fund basis, and is administered by the States. States are not required to participate in the program, but those which desire to take advantage of the substantial federal funds available for distribution to needy children are required to submit an AFDC plan for the approval of the Secretary of Health, Education and Welfare. . . . The plan must conform with several requirements of the Social Security Act and with rules and regulations promulgated by HEW. . . ." [9]

---

[8] Health, Education & Welfare, *Handbook of Public Assistance Administration,* Part IV, paragraph 6200 (j).

[9] *King v. Smith* (1968), 392 U. S. 309, 316, 317, 88 Sup. Ct. 2128, 20 L. Ed. 2d 1118.

It is the federal Social Security Act which contains the basic conditions for allocation of federal funds to the several states for the special purposes here involved. However, the Secretary of Health, Education and Welfare may also promulgate certain requirements, in conformity with the Social Security Act, with which a proposed state plan for participation in the funds and program must comply. The handbook details a variety of provisions which the states are urged to include in their state plan in order to insure its being acceptable to the secretary and likely to be approved by him. All of this is material only as to whether or not the state plan is to be approved by the secretary. Once such plan is approved, the responsibility for administration is placed upon the state. The state plan is not some vague or formless set of regulations. It consists of the state legislation and administrative rules and regulations enacted pursuant thereto. The state legislation and regulations do not have added to them every suggestion in an earlier-issued federal handbook put out to inform states as to what they should include in their plan. If the state plan submitted does not include all handbook suggestions, it is for the secretary to determine whether the plan as submitted is to be approved. He approves or rejects the plan as submitted. He cannot approve a plan as submitted, after grafting onto it everything contained in a handbook. At least he did not. We do not deal here with the matter of withholding federal funds because of the manner in which a matching fund program is being administered. We are asked where one looks to determine the rights of recipients of certain categorical aids and we hold one looks to the federal statutes, the responsive state statutes and the valid rules and regulations adopted by the state agency charged with administering the program. We conclude that no federal statute, no federal regulation, or no state statute has set a sixty-day limit for conducting the review hearing by the state department in the situation here presented.

There remains the question of whether the state department by its own rule or regulation has bound itself to conduct such hearing within a sixty-day time limit. The claim that it has is based on the manual, *Administrative Methods* (revised 8–12–68), particularly Chapter IX–5, setting forth provisions for conducting review hearings by the state agency of county department rulings. It sets forth a step-by-step procedure, including:

1. Mailing notice of hearing not later than three working days after receipt of petition or request for hearing.

2. Requiring county agency to prepare and provide state agency with a summarized statement of the case within ten days from the date of the notice.

3. Scheduling a hearing not later than fifteen days from the day the summary is received.

4. Providing for conduct of hearing by hearing officer; providing for stenographer who can operate a tape recorder to be present.

5. Providing that summary of the hearing, the recorded tape, exhibits and the recommendation of the hearing officer be sent to the legal section within seven days of hearing for preparation of formal decision.

6. Providing that the decision on the hearing will be made within fifteen days after receipt of the summary.

There is dispute as to whether the manual constitutes a rule or regulation as statutorily defined,[10] particularly because it was not enacted pursuant to the normal and

---

[10] Sec. 227.01 (3), Stats., provides: " 'Rule' means a regulation, standard, statement of policy or general order (including the amendment or repeal of any of the foregoing), of general application and having the effect of law, issued by an agency to implement, interpret or make specific legislation enforced or administered by such agency or to govern the organization or procedure of such agency."

statutorily prescribed procedure.[11] The contention is that the manual material is no more than a set of suggested guidelines for the conduct of review hearings. However, we hold that the manual material does constitute a rule or statement of policy within the meaning of the statute, particularly so because the legislature has exempted purely procedural rules from the notice and hearing requirements of ch. 227.

Is such rule or statement of policy mandatory or directive? The trial court held it to be directive, not mandatory, and we agree. Since the rule-making process of an administrative agency is derivatively a part of the legislative process,[12] this court has applied statutory rules of construction to the construction of administrative agency rules.[13]

The general rule followed in the construction of time provisions in statutes has been stated as follows:

". . . . a statute prescribing the time within which public officers are required to perform an official act is merely directory, unless it denies the exercise of power after such time, or the nature of the act, or the statutory language, shows that the time was intended to be a limitation."[14]

Here there is neither expressed nor to be implied any cutoff of the power of the department to act follow-

[11] Sec. 227.01 (4), Stats., provides: "Every statement of general policy and every interpretation of a statute specifically adopted by an agency to govern its enforcement or administration of legislation shall be issued by it and filed as a rule. . . ."

[12] *Schmidt v. Local Affairs & Development Dept.* (1968), 39 Wis. 2d 46, 158 N. W. 2d 306.

[13] *Loof v. Rural Mut. Casualty Ins. Co.* (1961), 14 Wis. 2d 512, 111 N. W. 2d 583.

[14] *State v. Industrial Comm.* (1940), 233 Wis. 461, 466, 289 N. W. 769, quoted with approval in *Muskego-Norway C. S. J. S. D. No. 9 v. Wisconsin Employment Relations Board* (1966), 32 Wis. 2d 478, 145 N. W. 2d 680, 147 N. W. 2d 541, 151 N. W. 2d 84, 151 N. W. 2d 617.

ing the expiration of the time limits set forth in the manual. Such cutoff in the right to proceed would be destructive of the purposes of the hearing and the categorical aid program to which such hearings relate. To this extent and on this point, the situation is analogous to the case where this court held a sixty-day time limit within which the state employment relations board was required to make a decision directory, not mandatory.[15] In the case before us, not only is there no cutoff of the right to proceed, but no penalty is placed upon failing to meet the schedule set forth.

Moreover, an examination of the rule reveals that it consists of a series of procedural steps, giving sequence and suggested time limits to each such step. As to the requirement that notice be given to concerned and affected parties, the word "shall" is used. As to subsequent steps, the word "will" is used. Examples: ". . . the county agency *will* prepare . . ." "The hearing *will* be conducted . . . ," "a summary of the hearing . . . *will* be sent . . . ," and "The decision *will* be made . . ." The shift from "shall" to require notice to "will" to describe subsequent procedural steps strengthens the interpretation given the manual materials by the trial court.

### DUE PROCESS.

Petitioner's brief states that "Even if no specific time limitation were established in the controlling regulations, it is clear that the required hearing must be held within a reasonable time," citing Corpus Juris to say:

"Where a public officer is required by statute to perform a public duty and no time is fixed for its per-

---

[15] *Muskego-Norway C. S. J. S. D. No. 9 v. Wisconsin Employment Relations Board, supra,* fn. 14; *see also Merkley v. Schramm* (1966), 31 Wis. 2d 134, 142 N. W. 2d 173, holding a sixty-day time limit within which a trial judge is to make a decision following submission of the cause to be directory.

formance, the duty must be performed within a reasonable time." [16]

Failure of an administrative agency to schedule and hold required review hearings can relate to a violation of due process or the Wisconsin constitutional provisions entitling citizens to ". . . a certain remedy in the laws for all injuries, or wrongs . . . promptly and without delay, conformably to the laws." [17] Obviously the factor of time is involved in a determination of whether such rights have been violated, but lapse of time is not the only factor involved. At the least, the constitutional provisions involved do not require nor justify a holding that a sixty-day time limit is to be judicially set as the outside limit for conducting a review hearing and reaching a decision. Counsel quotes the distinguished jurist who once observed, "Justice delayed is justice denied." It is also true that justice rushed can be justice crushed.

In an analogous situation involving the applicability of constitutional provisions for a speedy trial, this court has several times ruled that each case must be examined individually and on its merits to determine whether the constitutional assurance has been violated, holding that lapse of time alone does not constitute a violation of a person's right to a speedy trial. [18] The record here does not warrant our holding that an unreasonable delay violative of constitutional rights is involved. Actually, the class action was brought to enforce a sixty-day limit on the conducting of review hearings. There is no showing of prejudice to petitioner's rights, nor even a clear statement of how long the delay was in this case. The review hearing to which petitioner was entitled was held, and no mention of the outcome is contained in petitioner's brief or oral argument. It is enough here to hold that failure

[16] 67 C. J. S., *Officers*, p. 406, sec. 114.

[17] Wis. Const., art. I, sec. 9.

[18] *Williams v. State* (1968), 40 Wis. 2d 154, 157, 161 N. W. 2d 218.

to hold a review hearing within sixty days does not constitute an ipso facto denial of due process or promptness of remedy.

### PUBLIC POLICY.

We do not join the interesting discussion in the briefs and at the time of oral arguments on the manpower and personnel problems of the respondent department. This is relevant here only in making clear that we are dealing with a department that is not unwilling to provide prompt review hearings but is struggling to process a greatly increased number of such requests for review with the hearings becoming more complex as well as more numerous. Counsel for the state stresses the difficulty in securing authorization for additional positions and filling the present positions of hearing officer with persons of legal background and training. Counsel for petitioner responds that the conducting of hearings ought not to be limited to persons with legal training, and other employees of the department could and should be used to conduct review hearings. While this approaches suggesting that court backlogs be handled by drafting lay persons to dispose of cases, at least until the logjam is broken, the dispute is one of policy, probably for the legislature, perhaps for the department, to resolve. What the state has agreed to do in providing review hearings for recipients in categorical aid cases must be done. How it is to be done is for the legislative branch of government to determine.

### CHANGE OF VENUE.

The respondents seek to separately appeal from that portion of the order of the trial court which denied their motion for a change of venue from Milwaukee county to Dane county. Their brief on this point begins with the

acknowledgment that: "The general rule is that an order which denies a motion for change of venue is not an appealable order." [19] That is the general rule, and its foundation is that there is no statutory basis for hearing an appeal from such order. It is urged that this court has retained jurisdiction to decide an issue when the question was one of great public importance, even though the question had become moot. [20] The reason for non-appealability of an order denying a change of venue is not that the issue has become moot, but that this court has no statutory authority to hear the appeal. Since this court lacks jurisdiction to hear an appeal from an order which denies a change of venue, it is impossible to retain jurisdiction as to such order.

When the motion to change venue was denied, the respondents had an adequate remedy for review of the order through the use of a writ of certiorari. [21] When they failed to utilize such procedure and continued with the proceedings on the issues raised, they lost any opportunity they had to separately challenge the portion of the order which denied the change of venue. If the respondents had been aggrieved by the final judgment, any appeal from that judgment would have properly brought the order denying the change of venue before this court. [22] The respondents were not aggrieved by the order which

---

[19] See *Trossen v. Burckhardt* (1960), 9 Wis. 2d 304, 100 N. W. 2d 918; *Russell v. Johnson* (1961), 14 Wis. 2d 406, 111 N. W. 2d 193.

[20] *State v. Seymour* (1964), 24 Wis. 2d 258, 128 N. W. 2d 680.

[21] *State ex rel. W. G. Taylor Co. v. Elliott* (1900), 108 Wis. 163, 84 N. W. 149; *State ex rel. Nichols v. Circuit Court* (1926), 189 Wis. 629, 208 N. W. 490; *State ex rel. Birnamwood Oil Co. v. Shaughnessy* (1943), 243 Wis. 306, 10 N. W. 2d 292; *State ex rel. Hartwig's Poultry Farm v. Bunde*, ante, p. 229, 170 N. W. 2d 734.

[22] Sec. 274.34, Stats.; *Hewitt v. Follett* (1881), 51 Wis. 264, 8 N. W. 177; *Sanders v. German Fire Ins. Co.* (1905), 126 Wis. 172, 105 N. W. 787.

was entered in this case, and the portion of the order which denied a change of venue is not properly before this court. The separate appeal on the question of venue is dismissed.

*By the Court.*—Order affirmed.