DENNIS J. CONTA, Secretary Department of Revenue
You have asked that I reconsider my opinion issued on June 9, 1978, OAG 45-78. That opinion concluded that sec. 59.20 (13), Stats., controls the distribution of monies received under 31 U.S.C. secs. 1601, et seq. I have reconsidered OAG 45-78 and have concluded that while its conclusion is supportable, a stronger case can be made for the opposite conclusion. Thus, I am withdrawing that opinion.
In my opinion sec. 59.20 (13) concerns the distribution of national forest income under 16 U.S.C. secs. 471 et seq., but does not concern the payments under Title 31.
Title 16 U.S.C. sec. 500 provides:
 "PAYMENT AND EVALUATION OF RECEIPTS TO STATE FOR SCHOOLS AND ROADS; MONEYS RECEIVED; PROJECTIONS OF REVENUES AND ESTIMATED PAYMENTS
 "Twenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State in which such national forest is situated, to be expended as the State legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated: Provided, That when any national forest is in more than one State or county the distributive share to each from the proceeds of such forest shall be proportional to its area therein. In sales of logs, ties, poles, posts, cordwood, pulpwood, and other forest products the amounts made available for schools and roads by this section shall be based upon the stumpage value of the timber. . . ."
This statute has been in force since 1908 in all material respects. 35 Stat. 251, 260 (1908). It should be noted (1) that it provides that the payment shall be made "to the State." and (2) that the state is to use the monies for roads and schools of the counties in which the forests are situated. *Page 279 
The files of the Legislative Reference Bureau (LRB) contain a memorandum dated April 10, 1935, reporting that only small amounts had been received under Title 16 and that there was no state legislation authorizing its distribution to counties. The Legislature responded by passing ch. 400, Laws of 1935, "relating to the distribution of national forest income for county school and road benefit pursuant to federal statute, and making an appropriation." Sections 20.07 (10) and 59.07 (22), Stats., as then created, provided:
 ". . . (20.07) (10) Distribution of national forest income. All sums of money heretofore received or which may hereafter be received from the United States government for allotment to counties containing national forest lands and designated for the benefit of public schools and public roads in such counties, shall be distributed in proportion to the national forest acreage in each as certified by the United States Forest Service. Such distribution shall be made annually within sixty days after receipt of the money from the federal government."
 "(59.07)(22) Allotment of national forest income. In any year when the national forest income to any county is less than five hundred dollars, the entire sum shall be used toward payment of county school aid required under paragraph (a) of subsection (4) of section 40.87
to school districts included within national forest boundaries, but when such annual income shall exceed five hundred dollars, then seventy-five per cent shall be used for such school aid and the remainder shall be allotted to the county highway committee for construction and maintenance of highways within or leading to national forests."
These statutes subsequently have been amended and renumbered. Section 20.370 (1)(m), Stats., now provides that "national forest income" refers to:
 ". . . All moneys received from the U.S. government for allotments to counties containing national forest lands, and designated for the benefit of public roads in such counties . . . ."
Section 59.20 (13), Stats., now provides:
 "lf the treasurer's county receives national forest income, [the treasurer shall] make distribution thereof to the towns in the county wherein national forest lands are situated, each town *Page 280 
to receive such proportion thereof as the area of national forest lands therein bears to the area of such lands in the entire county. Fifty percent of the amount received by it shall be expended by the town exclusively for the benefit of roads therein."
This legislative history persuades me that "national forest income" within the meaning of sec. 59.20 (13), Stats., refers to the monies received under Title 16. It is necessary to read sec.59.20 (13) and sec. 20.370 (1)(m), Stats., in pari materia. Further, these statutes together must be read against the federal backdrop to which they have responded to determine the scope of their meaning. See Will v. H SS Department, 44 Wis.2d 507, 515,171 N.W.2d 378 (1969).
Title 31 monies, in contrast to Title 16 national forest income, are not payable to the states; are not restricted to school and highway purposes; and represent payments in lieu of taxes lost by the tax-exempt status of national forests.
Title 31 U.S.C. sec. 1601 provides:
 PAYMENTS TO LOCAL GOVERNMENT UNITS; AUTHORIZATION OF SECRETARY; USE OF FUNDS
 "Effective for fiscal years beginning on and after October 1, 1976, the Secretary is authorized and directed to make payments on a fiscal year basis to each unit of local government in which entitlement lands (as defined in section 1606 of this title) are located. Such payments may be used by such unit for any governmental purpose. . . ."
The legislative history shows that Congress consciously intended that local units of government rather than states should receive these monies. The Interior and Insular Affairs Committee reported:
 "Under existing programs for sharing public land revenues, the Federal government returns a percentage of revenues to the States, which are then distributed to State and local governments according to state law . . . .
 ". . . [T]he Committee believes that payments under [Title 31 U.S.C. secs. 1601, et seq.] should go directly to units of local government since the local governments are the entities which assume the burden for the tax immunity of these lands. . . ." Sen. *Page 281 
Rep. No. 94-1262, 94th Cong., 2nd Sess., reprinted in 1976 U.S. Code Cong. Ad. News, pp. 5968, 5978.
In fashioning administrative rules, the Department of Interior commented:
 "It was commented that to make all payments to the States and have them pass the money through would be a good system to handle the payments.
 "This system of handling payments would not be consistent with the Act." 42 Fed. Reg. 51, 581 (1977).
The Department then made a specific ruling that in Wisconsin the appropriate unit of local government to receive these payments was county government, id., and that payment to the states is precluded by the Title 31 program. Id. at 51, 581.
Further, national forest income under Title 16 is earmarked for roads and schools, whereas Title 31 payments in lieu of taxes are to be paid to the county with no strings attached. Title 31 U.S.C. sec. 1601 provides that, "Such payments may be used by such unit for any governmental purpose." (Emphasis added.)
Again, the legislative history of 31 U.S.C. secs. 1601, etseq., provides a clue as to why Congress felt a no strings attached approach was desirable. In Sen. Rep. No. 94-1262, supra
at 5972, the following paragraphs appear:
 "Even in the few instances when a local government's share of the various revenues and fees is sufficient to meet service demands arising from the Federal lands and to approximate the loss of ad valorem tax revenues which would otherwise be generated by those lands, too many of the revenue sharing provisions restrict the use of funds to only a few governmental services — most often the construction and maintenance of roads and schools. Yet, local governments are called upon to provide many other services to the Federal lands or as a direct or indirect result of activities on the Federal lands. These services include law enforcement; search, rescue and emergency; public health; sewage disposal; library; hospital; recreation; and other general local government services. It is only the most fortunate of local governments which is able to juggle its budget to make *Page 282 
use of those earmarked funds in a manner which will accurately correspond to its community's service and facility needs.
 "Many of the revenue sharing provisions permit the States to make the decisions on how the funds will be distributed. In far too many States, the result has been that the funds are either kept at the State level and not distributed to local governments at all or are parcelled out in a manner which provides shares to local governments other than those in which the Federal lands are situated and where the impacts of the revenue and fee generating activities are felt."
Additionally, when the Department of Interior was in the process of promulgating rules for administration of the program, citizens inquired as to whether the funds could be earmarked by new regulations for other purposes. The Department's response was that this was not the case. "Any payments authorized to be made under this Act are new revenues to be used for any governmental purposes." 42 Fed. Reg. 51, 581 (1977). See id. at 51, 582 (1881.2).
Thus, Title 31 payments are made to the local governmental units, rather than to the states, as payments in lieu of taxes, and these payments are neither income, revenues nor receipts of national forest lands. Title 16 monies, however, are not in lieu of taxes because they are paid to the states, are not required to be distributed to the municipalities in which national forest lands are located, and bear no relation to the local tax revenues lost by such municipalities because of the tax-exempt status of national forest lands. Also see Anderson Union High School Dist.v. Schreder, 56 Cal. App. 3rd 453, 128 Cal. Rptr. 529 (1976).
It is evident that sec. 59.20 (13), Stats., was intended to distribute national forest income for the purposes specified in Title 16. I must conclude that the distribution of payments received from the federal government under 31 U.S.C. sec. 1601,et seq., is not governed by sec. 59.20 (13), Stats., but rather is paid directly to the counties for any governmental purpose and should be received under the general authority contained in sec.59.20 (1), Stats.
BCL:CDH *Page 283