MEDA-CARE VANS OF WAUKESHA, INC.,
Petitioner-Appellant,

v.

DIVISION OF HEARINGS AND APPEALS and
Department of Health & Family Services,
Respondents-Respondents.

Court of Appeals

*No. 2005AP2979. Oral argument October 12, 2006.
—Decided April 11, 2007.*

2007 WI App 140

(Also reported in 736 N.W.2d 147.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Sally A. Piefer* of *The Schroeder Group, S.C.* of Waukesha.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Robert M. Hunter*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. SNYDER, P.J. Meda-Care Vans of Waukesha, Inc. appeals from an order upholding an administrative decision of the Department of Health and Family Services. Meda-Care contends that the court erred when it concluded that Meda-Care was not entitled to reimbursement beyond the base rate for transportation services provided during the 2002 calendar year. DHFS determined, and the circuit court affirmed, that DHFS was entitled to recoup any reimbursement that was in excess of the base rate because Meda-Care should have

verified its mileage using odometer readings as required by the provider handbook. We agree with DHFS. Accordingly, we affirm the order of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. The facts are brief and undisputed. Meda-Care provides transportation services to individuals who are recipients of Wisconsin Medicaid funds. At all times relevant to this case, Meda-Care was a certified specialized medical vehicle (SMV) provider under contract with DHFS. Wisconsin Medicaid reimburses SMV providers for transporting Medicaid-covered recipients who have a documented physical or mental disability that prevents them from traveling safely in a common carrier or private motor vehicle to receive covered services. Generally, mileage reimbursement is available for the shortest, most direct route beginning at the service recipient's point of pick up and ending at the service destination.

¶ 3. Between January 1, 2002 and December 31, 2002, Meda-Care provided SMV transportation services and documented their mileage for these services. Meda-Care received reimbursement from DHFS for the mileage expenses it submitted for that calendar year. DHFS audited Meda-Care's 2002 records and concluded that it had overpaid Meda-Care in the amount of $4563.10. DHFS explained that Meda-Care had failed to provide odometer readings in support of its mileage claims. DHFS relied on its SMV Handbook, which reads in relevant part:

**Documentation Requirements**

All Wisconsin Medicaid providers must maintain adequate documentation to substantiate their claims for

502

reimbursement for at least five years after the date of payment for their services. The "Reproducible Forms" section of this handbook contains sample forms you may use to record the required information . . . .

 . . . .

2. Trip Information.

♦ Documentation of every transport (refer to *Trip Ticket*), including the person(s) carried, the date, pick-up, drop-off points (type of facility and address), and odometer or tripometer readings.

¶ 4. Meda-Care had provided mileage documentation using a computerized calculation that is based on U.S. Census Bureau TIGER files (Topologically Integrated Geographic Encoding and Referencing) used in conjunction with fleet logistics software to code address locations in its service area.

¶ 5. Meda-Care contested the DHFS findings and filed a petition for review before the Division of Hearings and Appeals. There, the administrative law judge (ALJ) issued a proposed decision dismissing Meda-Care's petition and holding that DHFS correctly determined that it had overpaid Meda-Care for SMV trips in 2002. Meda-Care objected to the ALJ's decision, but it was nonetheless adopted as final by DHFS. Meda-Care then petitioned for review in the circuit court. In a written decision dated October 19, 2005, the court affirmed the agency decision, holding that Meda-Care was "not entitled to the $4563.10 due to the use of a computer mileage program rather than odometer recordings." Meda-Care appeals.

## DISCUSSION

¶ 6. Meda-Care originally framed the issue as whether an SMV provider is entitled to reimbursement

for SMV services where the provider documents mileage in a manner consistent with the applicable regulatory and statutory requirements. Stated another way, Meda-Care's question was what weight an agency handbook carries where its requirements are more stringent than those in the administrative code or the statutes. Meda-Care's allegations required us to consider whether DHFS's decision to reject mileage documented with computer files instead of odometer readings was rule-making, which would require administrative rule-making procedures set forth in Wis. Stat. ch. 227 (2005–06)[1]. The circuit court held that the SMV Handbook provision regarding mileage reimbursement "need not be promulgated as a rule in order to be binding upon Meda-Care . . . for the simple reason that it falls under one of the exceptions of [Wis. Stat.] § 227.01(13)."

¶ 7. After oral argument we ascertained the pertinent issue to be somewhat different than originally presented. Instead, the issue before us is whether Meda-Care agreed to be bound by the handbook when it entered into a service provider contract with DHFS. The provider agreement states in relevant part: "The Provider shall comply with all . . . official written policy as transmitted to the Provider in the Wisconsin Medicaid Program Handbooks and all other publications . . . ." We invited supplemental briefs on the issue and both parties responded.

¶ 8. Meda-Care asserts that the provider handbook's odometer reading requirement does not constitute "official written policy" because it was never promulgated as a rule; therefore, Meda-Care is not obligated to submit odometer readings under the con-

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

504

tract. Also, Meda-Care contends that there is a substantive conflict between the administrative code and the provider handbook and that Meda-Care has complied with the code.

¶ 9. The circuit court did not address the contract between DHFS and Meda-Care. However, the ALJ decision stated that "the SMV provider must follow law and policy detailing the documentation required for [the] MA program for payment for its services. [Meda-Care] agreed to follow the *SMV Handbook* in its contract with the MA program."[2] When we review the merits of the decision previously made, we review the agency's decision, not that of the circuit court. *Gordon v. State Med. Examining Bd.*, 225 Wis. 2d 552, 556, 593 N.W.2d 481 (Ct. App. 1999). We will not disturb an agency's factual findings if they are supported by credible and substantial evidence. *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 570, 579 N.W.2d 668 (1998). An agency's legal conclusions may be accorded great weight deference, due weight deference or de novo review, depending on the issues raised on appeal. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). Meda-Care argues that a de novo review is appropriate because DHFS's position is inconsistent with its own use of computerized mapping technology and is otherwise erroneous. We need not address the level of deference further because even under a de novo standard, we affirm.

¶ 10. DHFS asserts that Meda-Care agreed to document mileage using odometer or tripometer readings when it signed the Wisconsin Medicaid Program

---

[2] The circuit court did not address the contractual relationship. Instead it ruled the handbook provision was not a rule and that due weight deference should be afforded the agency decision.

Provider Agreement and thereby agreed to comply with "official written policy as transmitted to the Provider in the Wisconsin Medicaid Program Handbooks and all other publications . . . ." Meda-Care responds that the odometer reading requirement was never officially or properly promulgated by DHFS and therefore cannot be considered "official written policy" as referenced in the contract. In effect, Meda-Care argues that either the odometer requirement is not official written policy, and therefore not binding under the contract, or the odometer reading is official written policy, but invalid because it was never properly promulgated.[3]

¶ 11. Meda-Care directs us to *Will v. DHSS*, 44 Wis. 2d 507, 171 N.W.2d 378 (1969), and to *Frankenthal v. Wisconsin Real Estate Brokers' Board*, 3 Wis. 2d 249, 89 N.W.2d 825 (1958), for the proposition that an agency manual may constitute a statement of general policy requiring promulgation under WIS. STAT. ch. 227. In *Will*, our supreme court rejected the contention that an agency manual that provided procedural steps and time limits for public assistance review hearings was "no more than a set of suggested guidelines" and held that the manual material did constitute a rule or statement of general policy. *See Will*, 44 Wis. 2d at 517. In *Frankenthal*, the supreme court held that "mimeographed instructions for renewal of real-estate broker's licenses, which contained the requirement that all members of a partnership must be licensed as a condition to licensing the partnership, constituted the making of a rule." *See Frankenthal*, 3 Wis. 2d at 253.

---

[3] A state agency is required to "promulgate as a rule each statement of general policy and each interpretation of a statute which it specifically adopts to govern its enforcement or administration of that statute." WIS. STAT. § 227.10(1).

¶ 12. We are not persuaded, however, that the DHFS handbook provision advising service providers to document mileage with odometer readings rises to the level of rule-making or policy-setting demonstrated in either *Will* or *Frankenthal*. A rule is "a regulation, standard, statement of policy or general order of general application which has the effect of law and which is issued by an agency to implement, interpret or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency." Wis. Stat. § 227.01(13). We further observe that Wis. Stat. § 49.45(2) sets forth mandatory duties of the department, which include the duty: (1) to promulgate rules related to improper or erroneous payments and deadlines for repayment, § 49.45(2)(a)10.; (2) to promulgate rules to establish certification criteria and to certify providers, § 49.45(2)(a)11.; and (3) to promulgate rules to decertify a provider or restrict a provider's participation if grounds exists, *see* § 49.45(2)(a)12. Notably, the statute does not direct DHFS to promulgate rules regarding conditions of reimbursement, but instead to include those conditions in a contract with the provider. *See* § 49.45(2)(a)9. The DHFS handbook provision requiring odometer readings is a condition of reimbursement, not an administrative rule requiring promulgation.

¶ 13. Having determined that the handbook's reimbursement provision is not a rule, we must nevertheless determine whether it is "official written policy." For the following reasons, we conclude that it is. DHFS emphasizes that, under Wis. Stat. § 49.45(2)(a)9., the legislature directed it to "[p]eriodically set forth conditions of participation and reimbursement in a contract

with [the] provider of service under this section." In addition, the administrative code specifically identifies the provider agreement as "the contract between a provider and the department which sets forth conditions of participation and reimbursement," and defines the provider handbook as "a publication developed by the department for the use of providers which outlines program policies *and includes instructions on claim filing* and other aspects of participation . . . ." WIS. ADMIN. CODE § HFS 101.03(138) and (141) (Dec. 2003) (emphasis added). Finally, and persuasively, Meda-Care signed a contract in which it agreed to comply with the provider handbook.

¶ 14. Meda-Care also argues that the provider handbook contains a "caveat" that states "if there is any substantive conflict between [HFS] 101–108 and the handbook, the meaning of the Wis. Admin. Code holds." It contends that a substantive conflict exists because the handbook requires odometer or tripometer readings while the administrative code requires only truthful and accurate documentation.

¶ 15. Relevant code provisions can be found in WIS. ADMIN. CODE ch. HFS 106 (Aug. 2006). The code states that a provider is required to prepare and maintain truthful, accurate, complete, legible and concise documentation. WIS. ADMIN. CODE § HFS 106.02(9). Where documentation and record keeping requirements are not met, claims for services are nonreimbursable. Sec. § HFS 106.02(9)(f). Finally, "[c]laims shall be submitted in accordance with the claims submission requirements, *claim form instructions,* and coding information provided by the department." Sec. § HFS 106.03(2)(b) (emphasis added).

¶ 16. Our review of the relevant provisions and the terms of the contract, including the handbook

instructions on submitting reimbursement claims, reveals no substantive conflict. The handbook contains policies and guidelines "to assist in the implementation of administrative rules." *See Tannler v. DHSS*, 211 Wis. 2d 179, 187, 564 N.W.2d 735 (1997). There is no incompatibility here. Rather, Meda-Care fulfills its obligation to submit *complete* documentation under Wis. Admin. Code § HFS 106.02(9) only when it follows the instructions provided in the handbook.

## CONCLUSION

¶ 17. We agree with DHFS that it complied with the law when it set forth the conditions of participation and reimbursement in a contract with Meda-Care and, further, that by entering into the contract with DHFS, Meda-Care agreed to comply with the terms for reimbursement contained in the SMV Handbook. Accordingly, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.