EISENBERG, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR and HUMAN RELATIONS and others, Respondents.

*No. 177. Argued April 30, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 874.)

100

For the appellant there was a brief by *Alvin H. Eisenberg*, pro se, and *Jerome F. Pogodzinski* of counsel, both of Milwaukee, and oral argument by *Mr. Pogodzinski*.

For the respondents the cause was argued by *Gordon Samuelsen*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HANLEY, J. The sole issue on this appeal is whether the Department of Industry, Labor & Human Relations could be compelled to grant petitioner's request for the fixing of an attorney's fee.

Mandamus is an extraordinary legal remedy and the petitioner must establish that it is based on a clear, specific legal right which is free from substantial doubt.

*Will v. H&SS Department* (1969), 44 Wis. 2d 507, 511, 512, 171 N. W. 2d 378. The writ will issue only to compel performance by a public officer of a duty which he is bound by law to perform. *State ex rel. Racine County v. Schmidt* (1959), 7 Wis. 2d 528, 534, 97 N. W. 2d 493.

The thrust of petitioner's argument is that the trial court erred in refusing to grant his petition for an alternative writ of mandamus because it had previously, on November 24, 1970, "ordered" the respondents to actually make an award of attorney's fees which order the respondents have totally ignored. Petitioner relies upon a particular sentence in the November 24th decision of the circuit court which stated:

"The award of $1,144.65 was won through Mr. Eisenberg's efforts which were resisted by American Motors and he is entitled to a proper legal fee. Wis. Stat. sec. 102.26 (3) (1969) provides that the Commission 'shall . . . provide in the award for payment of such fee direct to the person entitled thereto.'"

Petitioner contends that this language is clear and unambiguous and directed a specific act; namely, that he was entitled to a fee and the department should set one. Therefore, because of the failure of the department to appeal to this court within thirty days as required by sec. 102.25 (1), Stats., it had no power to disobey the November 24th order or ask that it be reconsidered.

Directly following that part of the decision relied upon by the petitioner is the court's mandate which provides:

"Counsel for the DILHR may prepare the appropriate Judgment, affirming the Commission as to the denial of award for permanent partial disability, *and remanding for the Commission's determination of attorney's fee.*" (Emphasis added. )

Petitioner's argument that certain language in the November 24th decision represents an actual order to

the department that an actual fee must be set is inconsistent with the court's mandate which merely remanded the case for a determination of a fee. This would necessarily include the potentiality that no fee was in fact due.

In *M. & M. Realty Co. v. Industrial Comm.* (1954), 267 Wis. 52, 64 N. W. 2d 413, this court at page 60 stated:

"There is good authority for holding that in a situation where a mandate makes no reference to the opinion and is inconsistent with the opinion the mandate prevails. The United States supreme court in *West v. Brashear* (1840), 39 U. S. (14 Pet.) 51, 10 L. Ed. 350, 351, at page 54, said:
" 'There has been some discussion at the bar as to the principles by which a circuit court of the United States is to be governed when executing a mandate from the supreme court. Undoubtedly the mandate must be its guide. It is the judgment of this court transmitted to the circuit court. And when the direction contained in the mandate is precise and unambiguous, it is the duty of the circuit court to carry it into execution, and not to look elsewhere for authority to change its meaning.' "

Therefore, to whatever extent the written decision of the trial court was inconsistent with its mandate, the mandate must prevail.

Upon remand, the department found that petitioner's fee for representation of Shelton was 20 percent of zero. This finding was based upon the fact that the total award for temporary total disability was ordered to be reimbursed to Michigan Life pursuant to sec. 102.30 (3), Stats., and in its opinion denying the petition for an alternative writ of mandamus, the circuit court recognized that sec. 102.30 (3) had not previously been given full force and effect.

We think the court had the inherent power on discovering error in the dicta of its former opinion to set the record straight later by stating its reconsidered

opinion on the issue of fees due. The correction did not require the vacating or modifying of any former judgment that the department should determine the fee due, if any.

Sec. 102.30 (1), Stats., provides that ". . . liability for compensation shall not be reduced or affected by any insurance, contribution or other benefit whatsoever, due to or received by the person entitled to such compensation . . ." and to the extent that such payments are made, the employer is not relieved of his liability under the act. *Modern Equipment Co. v. Industrial Comm.* (1945), 247 Wis. 517, 20 N. W. 2d 121. Sec. 102.30 (3) represents a very limited and practical exception to this rule, so far as payments by nonindustrial insurance carriers are concerned. Implicit in sec. 102.30 (3),[1] is the recognition by the legislature that many unions have negotiated contracts compelling the employer to provide the employees with health and accident insurance that will give the same benefits to the employee for a nonindustrial accident or sickness to the same extent as the employer would be required to do if the disability was compensable under the act.

Generally, these policies have an exclusion clause if it is shown that the claim is covered by the act. The department contends that it would be detrimental to the employee if expenses were not paid by anyone until a formal hearing was held and liability fixed.

By the use of the words *"may order . . .* [reimbursement to the nonindustrial carrier] when it is established that such payments . . . were improper." (emphasis

---

[1] Sec. 102.30 (3) provides that:

"(3) The department may order direct reimbursement out of the proceeds payable under this chapter for payments made under a nonindustrial insurance policy covering the same disability and medical expense *when the claimant consents, or when it is established that such payments under the nonindustrial insurance policy were improper."* (Emphasis added.)

added) the legislature has vested in the department discretion concerning the extent of these payments. Pursuant to its nonindustrial policy, Michigan Life made payments of $1,160 and because Shelton's award for temporary total disability was $1,144.65, it ordered the entire amount recovered to be reimbursed to Michigan Life. Such order for payment was not an abuse of discretion.

In *Cranston v. Industrial Comm.* (1944), 246 Wis. 287, 16 N. W. 2d 865, this court held that the action of the commission in refusing to allow an attorney an amount was held to be a nonreviewable determination since under the provisions of the act, an attorney is not a "party aggrieved" by order of award, nor is his fee "compensation." Just as an attorney may, himself, not have direct review under ch. 102, Stats., of an order of the department concerning his fee, the department correctly contends that pursuant to sec. 102.26, Stats., the fixing and awarding of attorney's fees is a discretionary matter.

Since the petitioner had not collected more for the claimant than he already had received from Michigan Life, the department in the exercise of its discretion decided that the best interests of the claimant and the future of the compensation system itself required that the total recovery should be paid to Michigan Life to reimburse it for its prior payments to the claimant.

We conclude that a writ of mandamus could not properly compel the department to award any specific fee or require commissioners to repudiate the order made on remand.

*By the Court.*—Order affirmed.