LAKE BLUFF HOUSING PARTNERS, Plaintiff-Appellant,†

v.

CITY OF SOUTH MILWAUKEE, Defendant-Respondent.

Court of Appeals

*No. 00–1958. Submitted on briefs April 3, 2001.—Decided June 12, 2001.*

## 2001 WI App 150

(Also reported in 632 N.W.2d 485.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Fox, O'Neill & Shannon, S.C.* by *Bruce C. O'Neill* and *Diane Slomowitz*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joseph G. Murphy*, South Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Lake Bluff Housing Partners appeals from a judgment entered in favor of the City of South Milwaukee, ordering Lake Bluff to raze and remove two apartment buildings located on the shoreline in South Milwaukee. Lake Bluff claims the trial court erred when it found that there were no compelling equitable reasons to allow the Lake Bluff buildings to remain on the property. Because the trial court balanced all of the equitable considerations under *Forest County v. Goode*, 219 Wis. 2d 654, 681–85, 579 N.W.2d 715 (1998), there was no erroneous exercise of discretion. We therefore affirm.

## I. BACKGROUND

¶ 2. This case has been in litigation for over six years, including two appeals to this court and one to the Wisconsin Supreme Court. A complete history of the facts may be found in the earlier appeals. *See Lake Bluff Housing Partners v. City of South Milwaukee*, 197 Wis. 2d 157, 540 N.W.2d 189 (1995) (*Lake Bluff II*), *rev'g* 188 Wis. 2d 230, 525 N.W.2d 59 (Ct. App. 1994); *see also Lake Bluff Housing Partners v. City of South Milwaukee*, 222 Wis. 2d 222, 588 N.W.2d 45 (Ct. App. 1998) (*Lake Bluff III*). We offer a brief summary of the pertinent facts.

¶ 3. Lake Bluff purchased the property in question in December 1992. At that time, the parcel was zoned C–2, which allowed the property to be used for multi-family buildings. Before any building permits were issued, however, South Milwaukee rezoned the property to R-A, which would have allowed only single family residences to be built on the property. Lake Bluff sued, claiming that it had vested rights in the

prior zoning classification because it had purchased the property when it was classified C–2, and because it had submitted its requests for building permits while the property was classified C–2. The trial court agreed that Lake Bluff had vested rights and, on April 29, 1994, the trial court issued a writ of mandamus directing South Milwaukee's building inspector to issue the permits necessary for the construction of two multi-family apartment buildings. South Milwaukee issued the permits, pursuant to the trial court order.

¶ 4. The City of South Milwaukee ("City") filed a notice of appeal, asking this court to quash the writ. We affirmed the trial court's decision, agreeing that Lake Bluff had vested rights. *Lake Bluff Housing v. South Milwaukee*, 188 Wis. 2d 230, 233, 525 N.W.2d 59 (Ct. App. 1994) (*Lake Bluff I*). Our supreme court, however, accepted the City's petition for review and, on November 20, 1995, it reversed our decision, ordering the writ of mandamus to be quashed. *Lake Bluff II*, 197 Wis. 2d at 182. The supreme court held that because Lake Bluff "never submitted an application for a building permit conforming to the zoning and building code requirements in effect at the time of the application," it did not obtain any vested rights. *Id.*

¶ 5. While this matter was being appealed, Lake Bluff decided to finish construction on the project. Lake Bluff's decision was based on several factors, including its belief that it would lose substantial tax credits if the buildings were not completed by December 1994, and the fact that it believed it would win on appeal. The buildings were completed and occupancy permits were issued in August and September 1995.

¶ 6. When the supreme court remanded the matter with instructions to quash the writ, Lake Bluff filed a declaratory judgment action seeking to enjoin the

City from revoking the building and occupancy permits, and from issuing any orders to raze the buildings. Lake Bluff argued that the City's failure to seek a stay during the pendency of the appeal should estop the City from revoking the permits or razing the buildings. The City filed a counterclaim against Lake Bluff, asking the court to declare that the City could lawfully revoke the building and occupancy permits and could require Lake Bluff to remove the buildings located on the property so as to conform to the present R-A single-family zoning. The parties filed motions seeking summary judgment. The trial court agreed with Lake Bluff.

¶ 7. The City appealed to this court, and we reversed the trial court's decision. We held that " 'a building permit grants no right to an unlawful use,' " *Lake Bluff III*, 222 Wis. 2d at 227 (quoting *Lake Bluff II*, 197 Wis. 2d at 180), and the City's failure to seek a stay pending appeal does not bar it from enforcing its zoning requirements, *id.* at 229–30. This court pointed out that Lake Bluff "gambled on a favorable outcome" when it decided to proceed with its construction, *id.* at 228, and that "those who build in violation of lawful zoning regulations have no refuge from the requirements of [WIS. STAT. § 62.23(8)[1] . . . merely because construction is completed before lawfulness of the regulations is determined." *Id.* We stated that to rule otherwise "would encourage construction in violation of zoning codes." *Id.* at 229. We held that the City was not estopped from revoking the building permits and ordering the property razed. We remanded, however, to the trial court to engage in a *Goode* analysis of whether "there are compelling equitable reasons" which would

---

[1] WISCONSIN STAT. § 62.23(8) provides that buildings erected in violation of the applicable zoning regulations are subject to "abate[ment] and remov[al]."

make this one of "those rare cases" where the requested order of abatement should not be issued, *Goode*, 219 Wis. 2d at 684; *Lake Bluff III*, 222 Wis. 2d at 232.

¶ 8. On remand, the trial court engaged in the equitable analysis, and concluded that this was not one of the rare cases to not issue an order of abatement because there were no compelling equitable reasons requiring such an outcome. Accordingly, on June 6, 2000, the trial court issued a judgment ordering Lake Bluff to "raze and remove the two apartment buildings." Lake Bluff now appeals from that judgment.

## II. DISCUSSION

¶ 9. Under our remand, we directed the trial court to weigh the equitable considerations discussed in *Goode*. *Goode* provided that: "[T]he circuit court, sitting in equity, should weigh heavily the factors considered by boards of adjustment in determining unnecessary hardship, as well as traditional equitable considerations. Equitable defenses, such as laches, estoppel, or unclean hands should also be weighed in appropriate cases." *Id.*, 219 Wis. 2d at 681–82 (citation and footnotes omitted).

¶ 10. Lake Bluff claims the trial court erred on remand, citing three reasons why the abatement order should not have been issued: (1) the City had unclean hands; (2) abatement would cause unnecessary hardship; and (3) equity favored allowing the buildings to remain. Determining the equities of the situation presents an issue that is left to the discretion of the trial court. *Id.* at 670. Thus, our review is limited to whether or not the trial court erroneously exercised its discretion when it balanced the totality of the circumstances in this case. *Id.* We conclude that the trial court

did not erroneously exercise its discretion. In examining the trial court's decision, we will uphold any findings of fact that are not clearly erroneous. WIS. STAT. § 805.17(2). We will also determine whether the trial court applied the pertinent law in addressing the equities of the situation. We address each of Lake Bluff's claims in turn.

### A. Clean Hands.

¶ 11. Lake Bluff claims that the trial court failed to independently review its assertion that the City acted with unclean hands. Instead, Lake Bluff asserts that the trial court simply referred to and adopted facts set forth in the earlier appellate decisions. Lake Bluff contends that the trial court erroneously exercised its discretion when it did not conclude that the City acted with unclean hands. We are not persuaded.

¶ 12. Lake Bluff claims that the City had unclean hands because it failed to respond to Lake Bluff's inquiries about the plans submitted for approval, and because the City enacted a building moratorium in 1993 while it was considering a request to rezone the property. The trial court addressed both concerns in its twenty-seven page written opinion.

¶ 13. The trial court first set forth the pertinent law, citing *Security Pacific National Bank v. Ginkowski*, 140 Wis. 2d 332, 410 N.W.2d 589 (Ct. App. 1987):

> For relief to be denied a plaintiff in equity under the "clean hands" doctrine, it must be shown that the alleged conduct constituting "unclean hands" caused the harm from which the plaintiff seeks relief. . . . "[I]t must clearly appear that the things from which the plaintiff seeks relief are the fruit of *its own* wrongful or unlawful course of conduct."

*Id.* at 339 (citations omitted). The trial court found that the " 'conduct constituting unclean hands' . . . was not the building moratorium or the failure to respond to Lake Bluff's inquiries. Rather, it was Lake Bluff's decision to build in the face of South Milwaukee's challenge to the legality of the project." The trial court further found that although the City did contribute to making the Lake Bluff buildings nonconforming by changing the zoning classification and by challenging the legality of the project, neither action was "wrongful or unlawful . . . conduct." The trial court was correct. Under the circumstances presented here, the City is afforded the discretion to change a zoning classification, and is permitted to challenge the legality of Lake Bluff's project. Neither action makes the City's hands unclean.

¶ 14. The trial court's decision was based in part upon Lake Bluff's own actions. The trial court found that Lake Bluff's decision to build the apartment buildings on the R-A zoned property was "a business decision," based primarily on "potential financial gain." The trial court found that there "were signs along the way which warned Lake Bluff of the magnitude of the risk it was taking." These signs included the City's appeal, the language in the building permits indicating the permits were issued solely to comply with the trial court's order, the language in the occupancy permits stating that the permits were "subject to revocation," Judge Ralph Adam Fine's dissent in *Lake Bluff I*, and the supreme court's decision to grant the City's petition for review. The trial court found, as a result, that the harm was caused by Lake Bluff's business decision to proceed with construction before the final legality was determined. In essence, the trial court concluded that

Lake Bluff was the party with unclean hands. The trial court's findings were not clearly erroneous, and its decision was reasonable.

### B. Unnecessary Hardship.

¶ 15. Lake Bluff also claims that the trial court's decision to order the buildings razed was erroneous because such action would cause "unnecessary hardship." We disagree.

¶ 16. The trial court addressed the "unnecessary hardship" factor in its written decision, citing *State v. Kenosha County Board of Adjustment*, 218 Wis. 2d 396, 577 N.W.2d 813 (1998), which sets forth the standard applied to that term. In that case, the supreme court found that an unnecessary hardship exists when "no reasonable use of the property [exists] without a variance." *Id.* at 413. The court explained that: "the proper test is not whether a variance would maximize the economic value of the property, but whether a feasible use is possible without the variance." *Id.*

¶ 17. Here, the trial court found that a reasonable use for the property in compliance with the R-A zoning was possible. The City submitted evidence that the property could be divided into ten separate parcels for construction of single-family residences. Lake Bluff argues that the City's plan to build ten single-family homes on this piece of property was unreasonable and they would never provide the economic value that the apartment buildings would provide.

¶ 18. The standard, however, is not whether a variance would provide the greatest economic value, but whether any reasonable use for the property exists which would comply with the zoning classification. The

trial court found in the City's favor on this issue, and there is evidence in the record to support that decision.[2]

## C. General Equities.

¶ 19. Lake Bluff also contends that the trial court erroneously exercised its discretion for several additional reasons, which we group together in a category of "general equities." First, Lake Bluff argues that the trial court ignored the devastating financial impact it would incur if the buildings were destroyed. We disagree.

¶ 20. Lake Bluff argues that its multi-million dollar investment in the property should outweigh the other factors, and that the trial court's disregard of this factor is wrong. Lake Bluff indicates that it invested $4.2 million into the property and to raze the buildings will cost an additional $350,000. Lake Bluff suggests that this factor alone is sufficient to outweigh all the other equitable factors. The trial court disagreed and so do we.

¶ 21. Lake Bluff's financial investment is a factor to consider under *Goode*. The trial court considered the factor, and found that Lake Bluff's financial investment was an economic factor which favored Lake Bluff. However, the trial court found that this factor alone

---

[2] Lake Bluff argues that there is evidence in the record which contradicts the trial court's finding that single-family residences are a reasonable alternative use for the property. Such evidence, however, does not alter our conclusion that the trial court's factual findings are not clearly erroneous because there is evidence in the record to support the findings. Mere disagreement with the trial court's findings is not a basis for error.

796

was insufficient to justify equitable relief and, under the totality of the circumstances, this factor does not outweigh the other equitable factors favoring the City. The trial court reasoned that a party should not be able to "buy a variance" by making financial expenditures. Lake Bluff could have reduced its financial exposure if it would have delayed construction until the litigation in this case was completed. Lake Bluff gambled on a favorable outcome and lost. The trial court determined that Lake Bluff's business choice to proceed with construction, despite the City's appeal, resulted in the self-created financial exposure. The trial court's decision was reasonable.

■

¶ 22. Second, Lake Bluff claims the trial court failed to adequately consider the interests of the tenants living in the building. Contrary to Lake Bluff's claim, the trial court did properly consider the tenants' interests. In addressing this factor, the trial court found that although the situation of the tenants cannot be ignored, Lake Bluff may not convey a tenancy interest for the use of an apartment in a single-family area. The trial court also found that the tenants moved into the apartments knowing about the "rezoning litigation." Further, the trial court's order provided that the tenants would be permitted to finish out their leases before moving. The trial court properly considered this factor and reached a reasonable compromise so as to limit the harshness of the situation on Lake Bluff's tenants.[3]

---

[3] In a related argument, Lake Bluff suggests that an abatement order cannot be issued without joining the tenants and mortgagee as necessary parties under WIS. STAT. § 906.04(11). Lake Bluff's suggestion, however, is untimely. Lake Bluff made this argument for the first time during a hearing on the form of

■ ¶ 23. Third, Lake Bluff refers to WHEDA's (Wisconsin Housing and Economic Development Authority) involvement in support of its claim that there is an interest in providing affordable housing in South Milwaukee. The trial court addressed this factor, and concluded that WHEDA's involvement in this project is strong evidence of the state's interest in providing affordable housing at the property; nonetheless, WHEDA's approval is premised on compliance with local codes. The trial court reasoned that because Lake Bluff did not comply with the local codes, WHEDA's award of credits would be withdrawn and, therefore, would not favor granting a variance.

■ ¶ 24. Lake Bluff also suggests that WHEDA's award of credits was a large factor in its inability to forego building until the legality of the issue had been resolved. Lake Bluff argues that WHEDA's tax credit award would disappear if Lake Bluff failed to complete construction of the project by December 1994. In other words, Lake Bluff could not wait until the litigation was resolved. It had to build immediately or lose the

---

the judgment in May 2000. Claims that a necessary party have not been joined are required to be made by responsive pleading, if one is required, or by motion. WIS. STAT. § 802.06(2). This procedure was not followed. Moreover, the City asserts that the mortgagee and the tenants were aware of this action as evidenced in part by the tenants' participation in the hearing. Lake Bluff's reply brief does not refute the City's assertion and, therefore, it is admitted. *Charolais Breeding Ranches, Ltd. v. FPC Securities*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). Consequently, even though not joined, these parties were aware of, and participated in, the proceedings. The trial court's abatement order was properly issued.

tax credits. The trial court addressed this factor, noting that the December 1994 deadline was not met. Occupancy permits were not issued until August and September 1995. Thus, Lake Bluff's contention that construction had to begin because the project needed to be completed by December 1994 was not correct. Lake Bluff failed to meet the deadline, and still secured tax credits for the project. Accordingly, this factor does not favor Lake Bluff.[4]

¶ 25. Finally, the trial court considered a myriad of other equitable factors. First, it considered whether Lake Bluff's violations were minor; it found that they were not. Second, the trial court addressed whether the City's gain outweighed Lake Bluff's loss; it found that it did. In making this determination, the trial court reasoned that municipalities have the power to adopt comprehensive zoning ordinances, *see generally State ex rel. Carter v. Harper*, 182 Wis. 148, 196 N.W. 451 (1923), and that zoning may be the most essential function performed by local government in that it permits the municipality to protect its citizens' quality of life, *Village of Belle Terre v. Boraas*, 416 U.S. 1, 13 (1974) (Marshall, J., dissenting). We endorse this proposition.

¶ 26. Third, the trial court addressed whether an abatement order would result in non-economic gain to the City; it found that it would. The trial court pointed out that compliance with the zoning classification on the property would result in less crowding, more open area and green space, and greater access to air and light. The vigilant protection of our shorelands is also a substantial interest, and it is advanced by the trial

---

[4] Moreover, this court ruled that WHEDA's involvement does not entitle Lake Bluff to special treatment. *Lake Bluff III*, 222 Wis. 2d at 231 n.3.

court's ruling. *Goode*, 219 Wis. 2d at 685. The City has a legitimate interest in enforcing its valid zoning laws.

¶ 27. The trial court's written decision provides an extensive and thorough consideration of all the appropriate factors. It considered the totality of the circumstances when it weighed the equities. It balanced the business judgment risk undertaken by Lake Bluff against the City's interest in enforcing zoning laws. The decision reflects a comprehensive, reasonable decision.

¶ 28. The trial court further considered what remedy would be appropriate. The trial court acknowledged that removal of the buildings constituted the most drastic option and, therefore, considered whether some other remedy might suffice. The trial court addressed whether the buildings could be modified in some fashion so as to comply with the R-A zoning classification. It found that this was not possible. Next, the trial court considered imposing a fine in lieu of removing the buildings. The trial court found that levying a fine against Lake Bluff for the zoning violation would ignore the interest the public has in enforcing the zoning laws. The trial court reasoned that the interest would be "compromised if the payment of a fine can be a substitute for compliance with the zoning," and would constitute a "purchase" of a variance, against which *Goode* explicitly warned. *Id.* at 680. Accordingly, the trial court concluded that the only remedy available was an abatement order. The trial court's findings are not clearly erroneous and its ruling is reasonable.

### III. CONCLUSION

¶ 29. In sum, we conclude that the trial court properly engaged in the equitable analysis under

*Goode.* Its written decision addresses all the pertinent factors. The trial court also emphasized that it is only in a "rare case" when "compelling equitable reasons" exist that the requested order of abatement should not be issued. The municipalities, and the citizens who reside there, have a right to enforce their zoning laws. Although this case presented an unfortunate financial conundrum for Lake Bluff, ultimately it was Lake Bluff's own business decision, driven by the potential for financial gain, which resulted in proceeding with construction despite the uncertainty of the outcome, causing the ultimate financial loss. Under the totality of the circumstances presented, this is not one of those rare cases where equity overcomes the City's legal right and duty to secure compliance with its zoning classification.

 *By the Court.*—Judgment affirmed.